WARREN SPRINGER

*v.*

JOHN BORDEN.

*Opinion filed June 23, 1904.*

1. LEASES—*method for valuation of premises in fixing rental.* Under a lease providing that the rent shall be a sum equal to five per cent of the valuation of the premises exclusive of improvements, the "valuation" means the cash value of the naked lot, with a clear title in fee simple, without considering the appreciation or depreciation which the existence of the lease might have upon the value of the reversion.

2. SAME—*what evidence incompetent in fixing valuation of leased premises.* If a lease provides for payment as rent of a sum equal to five per cent of the value of the property without improvements, evidence as to the value or cost of buildings, the net income derived therefrom by the lessee, and whether it would be profitable to erect

modern buildings for the remainder of the term, is properly excluded in valuing the property. ·

3. SAME—*when rental value of other property in vicinity is not material.* In fixing the cash value of demised premises, evidence as to the rental value of other property in the vicinity, what such property was leased for and what had been paid for the leasehold interests is not competent, where the lease in question provides for payment of a certain per cent of the cash value of the property exclusive of improvements.

4. APPEALS AND ERRORS—*chancellor presumed to have considered competent evidence only.* In a chancery case, where the hearing was before the court, it will be presumed the chancellor did not consider the incompetent evidence on the final consideration of the case, unless the decree appears to have been affected by it.

*Springer* v. *Borden*, 112 Ill. App. 168, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. ·

W. N. GEMMILL, for plaintiff in error.

PENCE & CARPENTER, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Branch Appellate Court for the First District affirmed the decree of the superior court of Cook county finding the value of lot 3, in block 117, of the school section addition to Chicago to be $450,000 on January 1, 1902, as a basis for fixing the rent to be paid by plaintiff in error, as lessee, to defendant in error, as lessor, for the period of ten years beginning at said date. There was a former suit between said parties for the purpose of fixing the rent for the previous ten years beginning on January 1, 1892, and the provisions of the lease with reference to valuation are contained in the report of that case. (*Springer* v. *Borden*, 154 Ill. 668.) The writ of error in this case was sued out to review the judgment of the Appellate Court.

Plaintiff in error contends that defendant in error was not entitled to the relief asked for in his bill and given to him by the decree, for the reason that he was the cause of a failure to obtain an appraisal by appraisers under the provisions of the lease. Before the time for a new appraisal, the defendant, Warren Springer, appointed John C. McCord as an appraiser to assist in the valuation of the premises, and notified the complainant, John Borden, of such appointment. The complainant, while protesting that other persons should have joined with the defendant in selecting the appraiser, appointed George Birkhoff, Jr., to act with said McCord as an appraiser. These persons each suggested to the other the names of other persons from which to choose a third appraiser, but none of the persons suggested by either proved acceptable to the other. Finally, McCord accepted W. W. Baird, who had been suggested by Birkhoff, as a third appraiser, but it was found that Baird lacked the qualification of being the owner of a freehold in the south division of Chicago, required by the lease, and Birkhoff then refused to permit him to act. We gather from the evidence that each appraiser considered himself retained by the person appointing him and bound to look after his interests. There was no further effort made to select a third appraiser, and the appraisement failed for that reason. Although Birkhoff seems to have reported to the complainant or his counsel after each meeting with McCord, he denied that any directions were given to him by the complainant, and testified that the complainant urged him to have another meeting and agree upon a third man. We cannot say, from the evidence, that the appraisement failed through the fault of the complainant.

The lease provided that the lessee should pay as rent a sum equal to five per cent of the cash value of the demised premises, exclusive of the buildings and improvements which might be thereon. There was a building on

the premises and the lease had twenty years to run in the future. Defendant insisted, and offered evidence tending to prove, that the existence of the lease depreciated the value of the fee and restricted the use to which the property could be devoted, and would depreciate the value of the property to a purchaser from fifteen to thirty-five per cent. The principal controversy between the parties arises on that evidence, and is, whether the court, in fixing the cash value of the demised property, exclusive of the buildings and improvements, was bound to take into consideration the effect of the lease on the value of the fee. The court held that all evidence as to the effect of the lease on the value of the premises was immaterial and incompetent, and recited in the decree that the valuation was made without taking into consideration any effect of the lease on the value of the premises. The court construed the value of the demised property as contained in the lease to mean the cash value of the naked lot with a clear title in fee simple. The defendant insisted that the court ought to find the cash value of the fee simple as depreciated by the lease upon it, or, in other words, the cash value of the reversion.

The term of the lessee and the reversion after the expiration of the particular estate together constituted the entire fee, and under our statute the grantee of the reversion would be entitled to the rents. Anyone buying the reversion would pay more if the lease called for ten per cent per annum on the value than if it called for five, as in this case, and would pay more if the lease called for five per cent than if it called for four, which the evidence showed to be the basis for the market value of such estates when the cause was heard. Certainly, it would never be thought that a tenant must pay more rent by raising the value of the reversion because the rental fixed in his lease is high and consequently the reversion more valuable, and it would be equally unjust that he should pay less by reducing the valuation be-

cause his lease calls for a low rate and therefore the reversion is less valuable. The value of anything, in the common understanding, is the value of the full title, and not a value over and above some encumbrance. The cash value of the lot, exclusive of the buildings and improvements thereon, can mean nothing else than the value of the full title to the lot. According to the theory of defendant, a lease under very favorable terms to the lessee may be made still more favorable to him by showing that the terms of the lease depreciate the value of the reversion. A reduction in the value of the reversion would be equal to a reduction of rent, and the reduction of rent would reduce the value of the reversion, and so on in endless succession. The rule contended for is wholly impractical, for the reason that as long as the net annual rental is unknown the net value of the reversion cannot be ascertained, one of the necessary elements for fixing such value being lacking. No such plan for fixing the rental could have been anticipated by the parties. Our conclusion is in accord with the decision in *Goddard* v. *King*, 40 Minn. 164, and it is supported in principle by *Philadelphia Library Co.* v. *Beaumont*, 39 Pa. St. 43, and *Lowe* v. *Brown*, 22 Ohio St. 463. The value of the property for the purpose of fixing the rents could neither be increased by the fact that the burden on the lessee was great and the terms of the lease favorable to the lessor, nor reduced by the fact that the burden was light and the lease favorable to the lessee.

There is considerable complaint of the rulings of the court on the admission of evidence, but we do not find that the court excluded any competent testimony offered by the defendant. Evidence as to what income the property, with the buildings and improvements on it, produced was excluded, and it is insisted that the income of property is a proper element to be considered in determining the market value of such property. That may be true in many cases, but in this case the income from

the property to be valued was fixed by the lease, and the evidence offered and excluded related to rentals of the buildings and disbursements on account of the property. Whether the lessee could realize sufficient income to enable him to keep his covenant and pay the stipulated rent was not material. He agreed to pay an annual rent of five per. cent on the cash value of the vacant ground, and the court was right in excluding evidence as to the value or cost of the buildings or the net income to the lessee, or whether it would be profitable to erect a modern building for the remainder of the term. We think the court erred in admitting evidence on the part of the complainant as to the rental value of other property in the vicinity, what such property was leased for and what had been paid for other leasehold interests. The question what other leasehold interests were worth or how much other property was leased for was not material. The case, however, being in equity and the hearing before the court, it will be presumed that in a final consideration of the case the incompetent evidence was not considered unless the decree appears to have been based upon or affected by it, and we think that the legitimate evidence justified the decree.

It is contended that the court erred in fixing an excessive valuation upon the lot. There were several witnesses for the complainant who all testified to a value of $5500 per front foot, with the exception of one witness who placed it at $6000. The witnesses for the defendant fixed the value at $4000 per front foot, with the exception of one who estimated it at $3500 and another who thought it worth $4500 on the basis of a full title. The court found the value to be $5000 per front foot, and we are unable to say that the finding was against the weight of the evidence.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*