BENJAMIN J. ROSENTHAL *et al.* Plaintiffs in Error, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant in Error.

*Opinion filed October 27, 1915—Rehearing denied Dec. 17, 1915.*

1. APPRAISEMENTS—*when lessees are estopped to object that lots are appraised in lump sum.* Where the leases on two adjoining lots are assigned to members of a partnership, who conduct their business thereon, pay rent in a lump sum for both lots and fail to notify the lessor of the fact that one lease has been assigned to one partner and the other to the other partners, or to specifically object, in the proceedings for the appraisement of the lots, to appraising the lots together in a lump sum, they are estopped to object to the appraisement on that ground, particularly where no injury is shown to have resulted.

2. SAME—*when objections to appraisement are waived.* Objections to an appraisement must be raised at the earliest opportunity or they are waived, and where the lease of the lots appraised expressly provides that objections to the appraisement must be made in writing and filed within thirty days after the filing of the appraisement, a failure to so present an objection is a waiver thereof.

3. Other questions raised in this case are controlled by the decision in *Sebree* v. *Board of Education*, 254 Ill. 438, which has been re-examined and is adhered to.

CARTWRIGHT, DUNN and COOKE, JJ., dissenting.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

DONALD L. MORRILL, (MAYER, MEYER, AUSTRIAN & PLATT, of counsel,) for plaintiffs in error.

ANGUS ROY SHANNON, and RICHARD S. FOLSOM, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This bill was filed by Benjamin J. Rosenthal and Louis Eckstein July 7, 1905, in the circuit court of Cook county, to enjoin the board of education of the city of Chicago

from collecting, or attempting to collect, any rent in excess
of $9900 per annum for lot 31 of block 142, in School Sec-
tion addition to Chicago, from May 8, 1905, to May 8,
1915, and also from interfering with the peaceable posses-
sion of said land and the building thereon, and from en-
forcing a forfeiture of the leasehold therefor.   An answer
was filed and a full hearing had before the chancellor.   The
chief purpose of that hearing appears to have been the set-
ting aside of the appraisal of said lot claimed to have been
made under the terms of said lease.   The chancellor en-
tered a decree setting aside such appraisal and fixing the
value and rental of the premises.   From that decree an ap-
peal was prayed to the Appellate Court, which court re-
versed the decree and remanded the cause, with directions
to dismiss the bill for want of equity.   The case was then
brought to this court on a petition for *certiorari.*

The terms of the lease and supplemental lease in this
case are upon all material questions substantially like the
leases construed by this court in *Sebree* v. *Board of Edu-
cation,* 254 Ill. 438.   Counsel for defendant in error insist
that the issues raised in this case are identical with those
raised and passed upon in that case, with the exception that
one additional question is here involved, that is, the effect
of the appraisers having reported in a lump sum the ap-
praisements which they made on lot 31, and on lot 32, im-
mediately adjoining.   Counsel for the plaintiffs in error
earnestly argue that several other questions are raised in
this cause that were not passed on in the *Sebree case.*   We
have examined at some length the record and the issues
in this case as compared with the record and issues in the
*Sebree case, supra,* and can reach no other conclusion than
that as to the appointment of appraisers, their qualifications
to act, their method of appraisal, and, indeed, all other ques-
tions raised and argued here that were raised and argued
in the *Sebree case, supra,* the two records are substantially
identical, and therefore the decision in that case on those

questions must control here. The only important question not settled by that case is the one raised here as to whether the appraisers' report should be sustained as to lot 31 in view of the fact that said appraisers in their final report valued in a lump sum lot 31, and lot 32, immediately adjoining it on the south.

Lot 31 faces east on State street between Madison and Monroe streets, in the city of Chicago, and lies just south of an alley running east and west through the middle of the block, between State street on the east and Dearborn street on the west. In May, 1880, said board of education leased all of lot 31 to Robert D. Sheppard for fifty years under the original lease in this case. In 1884 this lease was assigned to Frederick Haskell. The next year a dispute arose over the re-appraisement clause of said lease, as a result of which, in June, 1888, a compromise was effected and a supplemental lease was entered into between the parties. Haskell assigned his interest in these leases to David L. Streeter, and the latter thereafter assigned them to Otto Young, who in July, 1902, assigned the same to Benjamin J. Rosenthal, Louis Eckstein and Louis M. Stumer. Lot 32 was held under similar leases from the board of education, except as to the amount of rent paid. The original leases on the two lots ran each to a different party, but David L. Streeter and Otto Young each, in turn, owned the leases of both lots, and the latter assigned the leases of both to Stumer, Rosenthal and Eckstein. Young, on July 31, 1902, stated in two notices, identical in wording, to the board of education, that he had assigned to said three persons "my leasehold interest in lots 31 and 32 in block 142, * * * which leasehold estates exist under two certain leases made by the board of education of the city of Chicago bearing date the 8th day of May, 1880, one to Robert D. Sheppard and the other to Thomas G. Otis, and the supplements thereto." It appears that at that time Stumer, Rosenthal and Eckstein were merchants on State

street, and continued to conduct their business on said lots, under the firm name of Stumer, Rosenthal & Eckstein, until 1903, when their firm was incorporated under the name of the Emporium World Millinery Company. The quarterly rent on these two lots was paid by this firm or corporation in a lump sum from the date it became lessee, by assignment, under said leases, in 1902, until 1905, when the dispute arose as to the re-appraisement under the supplemental and original lease, and this bill was filed. The checks for this rent were signed during these years by "Stumer, Rosenthal & Eckstein, per Louis M. Stumer," or "The Emporium World Millinery Co., per Louis M. Stumer, Pres. and Treas.," and the receipts during the same time were sent to the firm or company by the secretary of the board of education, both lots in one receipt. The last receipt given before the appraisement questioned by this bill reads:

"$4725.00.                              CHICAGO, *Feb. 8, 1905.*

"Received of Stumer, Rosenthal & Eckstein forty-seven hundred twenty-five dollars for rent L. 31 and 32, block 142, Sch. Sec. addition, for three months ending May 7, 1905.

BOARD OF EDUCATION OF THE CITY OF CHICAGO,
By L. E. Larson, *Secretary.*"

The first and all other receipts in the records read substantially the same, except as to dates.

Counsel for plaintiffs in error insist that the Appellate Court erred in holding that plaintiffs in error were estopped from complaining of the action of the appraisers in valuing together in a lump sum, in their final report, lots 31 and 32. The bill of complaint sets up that at the time Rosenthal, Eckstein and Stumer received the assignment from Otto Young, July 1, 1901, of the leases on lots 31 and 32, Rosenthal and Eckstein assigned their interest in the lease on lot 32 to Stumer, and that Stumer at the same time assigned his interest in the lease on lot 31 to Rosenthal and Eckstein. The bill does not allege, and the proof does not show, that any formal notice was given to the board of

education as to these assignments between Rosenthal, Stumer and Eckstein. The same appraisers were appointed, at the same time and by the same method and authority, as acted in the *Sebree case.* They took the oath of office and sent a notice to Stumer, Rosenthal and Eckstein that they had been appointed to value said lots 31 and 32 along with other property, and that they would meet on the 27th day of March, 1905, to consider any papers and statements connected with the appraisements that said Stumer, Rosenthal and Eckstein might wish to submit to them. A list of the properties to be appraised was attached to the oath taken by the appraisers, and in that list appear the lots here in question, described as "150-152 South State street, east front, (alley on north side of lot 31,) 48 by 120 feet; 152 State street, lots 31-32, block 142, School Section addition,"—Stumer, Rosenthal and Eckstein being named as the owners of the leases. Rosenthal and Eckstein signed a paper dated March 29, 1905, protesting against the appraisers' appointment, which was served on the appraisers and on the secretary of the board of education April 12, 1905. This protest, while setting up some fifteen specific reasons why it was claimed the appraisers were not legally qualified to serve, did not in any way call attention to the fact that lots 31 and 32 should be appraised separately. It is true, said protest stated that said Rosenthal and Eckstein were owners of lot 31, no reference being made to lot 32. Notwithstanding this protest the appraisers went on with their work of appraising this and other property under other school leases which they had been named to appraise, including the property in the *Sebree case, supra.* Counsel for plaintiffs in error appeared before the appraisers to suggest what re-valuation ought to be put on said lot 31, and the same counsel represented Stumer, the owner of lot 32, on that hearing. In the written argument filed by them before the appraisers, included in the record, they stated that Rosenthal and Eckstein were the owners of lot 31 and

Stumer of lot 32, but they made no specific statement objecting to valuing these two lots together, though counsel for the board of education, in filing a reply brief before said appraisers, specifically stated in that brief that the two lots were owned by Stumer, Rosenthal and Eckstein, partners in active business transactions, and that they formed a single tract. We find nothing in the record indicating that any objections were made by plaintiffs in error or their counsel to this statement in the printed brief for the board of education. After hearing arguments, both oral and written, on both sides, the appraisers proceeded to value the property, and according to the testimony of the appraisers found in this record, they, in fact, appraised lot 31 at $324,000 and lot 32 at $312,000 and fixed the appraisement of the two lots in a lump sum at $636,000. The report of the appraisers made no mention of the separate appraisement of the lots, speaking of them both as leased by the board of education to Stumer, Rosenthal and Eckstein. After this report was made to the board on June 21, 1905, plaintiffs in error filed a protest with the board of education as to this appraisement, stating specifically five different objections thereto, involving the appointment and qualifications of the appraisers and the fairness of their appraisal, but not in any way objecting to the fact that lot 31 had been appraised with lot 32, merely reciting in the objection that Rosenthal and Eckstein were the owners of said lot 31. Thereafter, on July 3, 1905, Eckstein and Stumer met in the rooms of the board of education the secretary and the attorney of said board. Eckstein at that time tendered a check for the amount of the quarter's rent then due on lot 31 figured according to the previous appraisal of said lot, and Stumer tendered a check for the quarter's rent due on the basis of the previous appraisal of lot 32. The evidence shows that they asked the secretary of the board what rent was due on each of the lots, and the evidence of Eckstein and Stumer is to the effect that he told them what

was due on the two lots together. We will not attempt to detail all the evidence as to this interview, but it is clear that nothing was said there specifically stating that plaintiffs in error objected because the two lots had been appraised together. Indeed, a reading of all that was said would not lead to the conclusion that they were objecting on that ground. This bill was filed July 7 following. Then for the first time in any document or statement, so far as we can find from the record, did plaintiffs in error object for the reason that the two lots had been appraised together.

Counsel for plaintiffs in error insist that because in the written protest to the appointment of the appraisers and the written objection as to the appraisement they stated that they were the owners of lot 31 and that no appraisal was made on said lot in conformity with the lease and supplemental lease, they thereby gave sufficient specific notice of the fact that they were objecting to the appraisement of the two lots as one tract. With this we cannot agree. It would have been a very simple matter to raise this objection in specific terms in any of these documents had they desired to do so, the same as they did in the bill of complaint in this cause. Certainly no one reading the history of these leases and their re-valuation would have any reason to believe that the objections of plaintiffs in error to the appointment of the appraisers, or any of their actions, were based on the fact that said appraisers intended to, or did, appraise the two lots together. As already stated, numerous specific objections were raised in these two protests, and it is manifest from reading them, and the arguments in support thereof, that plaintiffs in error's objections to the appraisers had reference only to their appointment and qualifications and the value put upon these lots. The course of action of plaintiffs in error in failing to notify the board of education, in writing, of the assignment of the leases between themselves as to the separate lots; in occupying

both lots jointly for their firm business; in paying the rent of both lots in lump sums from the date they became lessees until the making of this appraisal, and, indeed, their entire conduct from the beginning of their connection with these leases until they filed their bill in the circuit court, was of such a character as to constitute an equitable estoppel against the relief they now seek on the ground that the two lots were appraised together. The representatives of the board were necessarily led to believe by plaintiffs in error's conduct that the leasehold interests in the two lots had been merged into one holding for the purpose of carrying on the business then conducted on the premises. Moreover, we cannot see how plaintiffs in error were injured in any way by the appraisement as to these two lots being reported in a lump sum. Stumer and plaintiffs in error for years have occupied the lots as a single piece of property for the business carried on by them, have paid rentals in lump sums, and have always accepted receipts therefor in the name of the three lessees and not according to the alleged separate ownership of the property,—and this without notifying the board of their separate holdings, presumably for their own use and benefit. As they have shown no injury because of the appraising of these two lots together they cannot now complain that the board treated them as owners of a single piece of property and listed all three as tenants of both lots.

Plaintiffs in error insist that the question of estoppel was not raised in the answer in the court below and therefore cannot be insisted on here. It is a familiar rule of pleading that a defendant is bound to apprise the complainant, in a clear and unambiguous manner, by his answer, of the nature of the case he intends to set up, otherwise he cannot avail himself of any matter of defense not stated in his answer, even though it should appear in his evidence. (*Chicago, Rock Island and Pacific Railway Co.* v. *People,* 222 Ill. 427, and cases cited.) This defense of estoppel is

set up in the answer of defendant in error. While it might have been stated in the answer with more particularity and certainty, it is sufficiently set out to apprise plaintiffs in error that such a defense would be insisted upon. If it be conceded, however, for the purposes of this case, that this defense was not properly set up in the answer, we do not see how the plaintiffs in error, in view of the allegations of their bill, can avail themselves of this point. The leases provided, and the bill alleges, that the lessees and their assigns shall be estopped from objecting to any matter connected with the appraisement unless such objection shall be made in writing and filed with the clerk of the board of education within thirty days after the filing of the appraisers' valuation or appraisement in the office of the clerk of said board. The objection or protest which complainants filed on June 21, 1905, as set forth in their bill, and which was the only written objection filed by them after the appraisement was made, made no specific objection to the appraisement of lots 31 and 32 as one tract or the failure to appraise each lot separately. The bill itself, therefore, shows that plaintiffs in error were estopped from objecting to the appraisal together of lots 31 and 32 by their failure to object within the thirty days given them by the leases. It is axiomatic that a complainant must recover, if at all, in accordance with the allegations of his bill. Furthermore, objections as to an appraisement must be raised at the earliest opportunity or they are waived. *Sebree* v. *Board of Education, supra.*

Counsel for plaintiffs in error insist that the conclusion herein reached is not in harmony with the reasoning of this court in *Rosenthal* v. *Board of Education,* 239 Ill. 29. With this we do not agree. In that case, between the same parties in this same proceeding, the sole question was whether the decree appealed from was interlocutory or final, this court agreeing with the Appellate Court that it

was interlocutory. The court did not attempt in that case to pass on the merits of the litigation.

Neither do we agree with the contention of counsel for plaintiffs in error that the Appellate Court, by its judgment entered in this cause, enforced the forfeiture of this lease contrary to the principles and maxims of equity. While it is true that the bill alleged that the board of education was contemplating forfeiting the lease because of plaintiffs in error's refusal to pay the rental as fixed by the appraisers, it is manifest the board had no intention of forfeiting it if plaintiffs in error did pay the rental as so fixed. These same appraisers, under this same appointment, as shown by the record in *Sebree* v. *Board of Education, supra,* appraised property under some twenty-three different leases. Most, if not all, of these twenty-three leases were in litigation as to the validity of the appraisement in question. Since the decision in the *Sebree case, supra,* as we understand from the briefs in this case, the litigation as to all the leases except these two lots has been finally settled and the lessees are paying the rentals under the appraisement here questioned. It is the duty of the board of education to treat the lessees interested in these two lots in the same manner it has treated the other lessees under said leases.

The conclusion reached on the points already considered does away with the necessity of considering the other questions raised by plaintiffs in error in their briefs.

Counsel for the defendant in error insist that the court in *Sebree* v. *Board of Education, supra,* overruled former holdings in *Springer* v. *Borden,* 210 Ill. 518, and *Columbia Theater Co.* v. *Adsit,* 211 id. 122, as to the duties of the appraisers and the rules that should govern them in finding the cash value of land under leases such as this. We discussed this question at some length in the *Sebree case.* The terms and conditions of the leases here in question are different from the terms and conditions of those in *Springer* v. *Borden, supra,* and *Columbia Theater Co.* v. *Adsit,*

*supra.* We have again examined the cases referred to by counsel for defendant in error in connection with what was said on this subject in the *Sebree case* and find no real or apparent conflict in those decisions on the questions suggested by counsel. What we said in the *Sebree case, supra,* on the question of the duties of the appraisers under these leases in re-valuing property will furnish a satisfactory guide to appraisers hereafter, if called upon to re-value property under said leases.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

CARTWRIGHT, DUNN and COOKE, JJ., dissenting.