The First National Bank of Mobile, as Trustee under the will of Lua G. Gallalee, deceased, together with Mrs. Lua Gallalee's son Jack C. Gallalee and daughter Lua G. Martin, as owners of the fee simple title to certain real property on University Boulevard in Tuscaloosa, entered into a 51-year ground lease, dated May 10, 1963, to Ward McFarland, Inc. The plaintiffs in this litigation, Joe B. Duckworth and Everett Hale, as trustees of the Professional Center Trust, succeeded to the interest of the original lessee. The original lessors are parties defendant to this litigation, except that the Bank and Jeppie A. Gallalee, the widow of Jack C. Gallalee, are successors in interest to Mr. Gallalee.
The plaintiffs filed a declaratory judgment action seeking construction of the lease, specifically the method of determining the rent for the 5-year period beginning on May 15, 1983, and for the later rental periods stated in the lease.
Rental payments after the first 20 years of the lease are based upon the following clause in the lease:
 "2. The rent for the twenty-first (21st) through the twenty-fifth (25th) years of the lease shall, at the option of the Lessor, be (a) $32,508.90 payable in sixty (60) equal monthly installments of $541.82; or (b) Thirty (30%) percent of the value of the leased premises as determined by an appraisal, as provided *Page 710 
below payable in sixty (60) equal monthly installments."
Paragraph 9 of the lease provides for the selection of an appraiser and for rent to be a stated percentage of the value of the leased premises as determined by the appraisal. Paragraph 9 reads as follows:
 "Any appraisal as provided in parts (b) of paragraphs numbered 2, 3, 4, 5, 6 and 7 above, shall be made by a reputable appraiser or realtor in Tuscaloosa, at the cost of Lessor. In case of any question as to the qualification of the appraiser chosen by Lessor, Lessor shall submit to Lessee a list of three (3) persons whom Lessor considers qualified, and who are members of the Appraisers Institute or licensed realtors doing business in the City of Tuscaloosa, Alabama, and Lessee shall choose one person from such list, which person so chosen shall make the appraisal mentioned. In such appraisal no buildings on said property are to be considered in arriving at the value of the leased premises, whether said improvements were made by the Lessee or by others, but the appraiser shall consider such matters as paved streets, drainage, and other improvements which are not buildings. Lessee shall be furnished a copy of such appraisal." (R. 137-138).
The parties stipulated to the following facts:
 "That a reputable appraiser in Tuscaloosa was selected in the manner provided in said Paragraph 9, to wit, James D. West, MAI, SRPA, and on November 26, 1982, an appraisal was rendered by Mr. West, which stated that the market value of the subject property as of November 23, 1982, was Four Hundred Sixty Two Thousand and No/100 ($462,000.00) Dollars, a copy of said appraisal being attached hereto as Exhibit "D." In rendering his appraisal no buildings or other improvements (except site improvements) were considered in arriving at the value, and the impact or existence of the unexpired terms of the lease itself was not considered. Based upon his valuation, the monthly rent for the twenty-first (21st) through twenty-fifth (25th) years of the Lease would be in the amount of Two Thousand Three Hundred Ten and No/100 ($2,310.00) Dollars."
Since the beginning of the 21st year, all lease payments of $2,310 per month were paid by the plaintiffs under protest.
The case was tried without a jury on a stipulation of facts, certain testimony, and exhibits. The trial court entered a judgment in favor of the plaintiffs. The court found that the term "value of the leased premises" was ambiguous and subject to more than one interpretation. The trial court ordered the defendant lessees to employ an appraiser to determine the value of the leased premises taking into consideration the effect of the lease agreement itself. We reverse.
When evidence is presented to a trial court sitting without a jury, the general rule is that its findings will be presumed correct and will not be disturbed on appeal in the absence of plain and palpable error. However, if the evidence before the trial court is undisputed, as in the present case, this Court must consider the evidence de novo, indulging no presumptions in favor of the trial court's findings. Sasser v. Spartan FoodsSystems, Inc., 452 So.2d 475 (Ala. 1984).
We agree with the trial court's determination that the lease is ambiguous as to whether the existence of the lease itself is to be considered in arriving at the "value of the leased premises." The lease agreement provides no guidance regarding the method of appraisal to be used, and it does not specifically define the term "leased premises."
An ambiguous contract is to be construed according to the intention of the parties thereto, which is to be gathered from the contract as a whole and by examining the actions of the parties and the *Page 711 
subject matter of the contract. Gulf Fishing Boating Club,Inc. v. Bender, 370 So.2d 1026 (Ala.Civ.App. 1979).
The parties in this case stipulated that none of the original contracting parties to the lease was available to testify as to the meaning of the term "leased premises." The only relevant acts of the parties subsequent to the execution of the lease is the employment of an appraiser pursuant to paragraph 9 of the lease and the disagreement as to whether the existence of the lease should have been considered by the appraiser.
Alabama law does not specifically address whether the existence of the lease itself should be included as a factor in determining the "value of the leased premises." However, case law from other jurisdictions supports the contention that the lease itself should not be considered.
In Springer v. Borden, 210 Ill. 518, 71 N.E. 345 (1904), the Supreme Court of Illinois was faced with the task of interpreting a ground lease which provided that the amount of rent for a term of years should be equal to five percent (5%) of the "cash value of the demised premises, exclusive of the buildings and improvements which might be thereon." According to the evidence in Springer, there was a building on the premises and 20 years remained under the lease. Despite the plaintiff's contention that the existence of the lease depreciated the value of the fee and restricted the use to which the property could be devoted, the court held that all evidence as to the effect of the lease on the value of the premises was immaterial and incompetent, and that the valuation of the leased premises should be made without considering any effect of the lease on the value of the premises.
The holding of Springer v. Borden, supra, was upheld inGiddens v. Board of Education of the City of Chicago, 398 Ill. 157, 75 N.E.2d 286 (1947). The Illinois Supreme Court interpreted the following lease language:
 "[T]he true cash value of said demised lands at the time of such appraisal, exclusive of the improvements thereon."
Giddens, 398 Ill. at 160, 75 N.E.2d at 288.
The court held that "cash value" meant "the fair cash market value of the naked lot, with a clear title in fee simple, and without the appreciation or depreciation which the existence of a lease might have upon the value." Giddens, 398 Ill. at 171,75 N.E.2d at 293.
In Bullock's, Inc. v. Security-First National Bank of LosAngeles, 160 Cal.App.2d 277, 325 P.2d 185 (1958), the court held that where a lease provided for rent in an "amount equal to 5 percent of the appraised value of the leased land" exclusive of buildings and improvements thereon, the fair market value of the property rather than its rental value for any given time was the proper measure of rent owed to the lessor.
The court went on to state:
 "While rental income is normally a proper factor to be considered in determining the value of property, it obviously cannot be considered when property is being appraised for the very purpose of determining the rent which should be paid. The rent cannot even be determined until a valuation of the land has been made.
". . .
 "According to the theory of complainant, a lease under very favorable terms to the lessee may be made still more favorable to him by showing that the terms of the lease depreciate the value of the reversion. A reduction in the value of the reversion would be equal to a reduction of rent, and the reduction of rent would reduce the value of the reversion, and so on in endless succession. The rule contended for is wholly impractical, for the reason that, as long as the net annual rental is unknown, the net value of the reversion cannot be ascertained, one of the necessary elements for fixing such value being lacking. No such plan for fixing the rentals could have been anticipated by the parties."
Bullock's, 160 Cal.App.2d at 286-87, 325 P.2d at 191. *Page 712 
The most recent case on this issue is Olympia York 2Broadway Co. v. Produce Exchange Realty Trust, 93 A.D.2d 465,462 N.Y.S.2d 456 (1983), which held that where a lease specifically provided for a determination of rent based upon appraised value of land as though it were vacant and unimproved, the rental value would be determined without taking into account existing structures, encumbrances, and leases. The rent in Olympia was a sum equal to five percent (5%) of the value of the land, as determined by appraisal, the land to be considered as "vacant and unimproved." In construing the term "vacant and unimproved," the court held that the parties manifested a clear intention that existing structures, encumbrances, and leases were not to be taken into account in determining the rental value.
The language of the lease in the present case is similar to the language of the lease in Olympia. The subject lease states that buildings and other improvements, except for paved streets, drainage, and other non-building improvements, are not to be considered. In addition, at the time the present lease was originally negotiated, there was not a lease in effect and there were no buildings on the property. It is, therefore, logical to conclude that the parties to this lease were bargaining with respect to unencumbered and unimproved land, and anticipated that the appraiser would base his valuation 20 years later upon the same premise, i.e., unencumbered and unimproved property.
Based upon sound reasoning from other jurisdictions and the logical intentions of the parties, we hold that the existence of the lease itself should not be considered in determining the value of the leased premises. Accordingly, the judgment of the trial court is reversed, and a judgment is hereby rendered declaring the proper construction of the lease term "value of the leased premises."
REVERSED AND JUDGMENT RENDERED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.