James H. Parker, the plaintiff in a breach-of-contract and fraud action in the Jefferson Circuit Court, appeals from a judgment as a matter of law in favor of the defendant, William Leon Williams, Jr. Williams cross-appeals from a judgment as a matter of law entered by the trial court in favor of Parker on Williams's counterclaim. We affirm.
 I. Background
Williams is an attorney who has practiced law in Birmingham for over 40 years. In December 1997, Robert Shelborne approached Williams about representing him in a business transaction in London, England, from which Shelborne believed he would receive $31 million. Williams and Shelborne entered into a written agreement pursuant to which Williams would receive a fee of $1 million for his services, contingent upon Shelborne's receiving the $31 million. Williams established a "receptacle" account with J.C. Bradford Company for Shelborne to deposit the $31 million. Williams also provided Shelborne *Page 478 
a key to Williams's office and a pager so the two could remain in contact "in case something broke fast."
Williams and Shelborne's contact regarding the London transaction was an individual who identified himself as Robert Tundy and who said that he was with the "Presidency" in London. Tundy informed Williams and Shelborne that Shelborne would have to pay a tax of $200,010 in order to receive the $31 million, which appeared to have originated in Nigeria.[2] Williams and Shelborne attempted to borrow $200,010 from various sources but were unsuccessful. In May 1998, Tundy told Williams and Shelborne that he would raise $100,000 from sources in Nigeria if they would pay the balance on the tax of $100,010.
Shelborne approached Parker about loaning him $50,000 as partial payment of the tax. Shelborne and Parker had been employed by the same insurance agency. Shelborne twice met with Parker to discuss the proposed loan. During the second meeting Shelborne mentioned that Williams was assisting him with the transaction, and Parker asked Shelborne to have Williams meet with him to explain the transaction. Williams met with Parker, and Parker alleges that during this meeting Williams guaranteed the loan. Parker agreed to loan Shelborne the $50,000, and on May 4, 1998, Shelborne executed a promissory note, drafted by Williams, payable to Parker, pursuant to which Shelborne agreed to pay Parker $100,000 within 72 hours of receiving $50,000 from Parker. Although Williams signed the promissory note as a witness, there was no written agreement indicating that Williams would guarantee the loan. After the promissory note was executed, Parker provided Shelborne a cashier's check in the amount of $50,000. Parker, Williams, and Shelborne went to the bank, where the funds were wired as instructed to an account at Chase Manhattan Bank.[3]
After the $50,000 was transferred on May 4, 1998, neither Shelborne nor Williams heard from Tundy again. Not surprisingly, the $31 million was never transferred into the J.C. Bradford account Williams had established. On June 1, 1998, Shelborne returned the pager and the key to Williams's office to Williams's secretary. Williams testified that Shelborne then "disappeared" and that he had no further contact with him. Subsequently, Williams contacted the United States Embassy in London and learned that a "Presidency" did not exist in London.
Parker contacted Williams numerous times to inquire when he would receive $100,000 under the promissory note. According to Parker, each time he inquired Williams promised that Parker would receive the money soon. Shelborne, however, *Page 479 
never honored the terms of the promissory note.
After learning that there was no such entity as a "Presidency" and that he had been defrauded, Williams, on behalf of Parker, sued Shelborne, whom he had represented in the failed transaction, seeking the amount due Parker under the promissory note and damages. Williams also named Shelborne's mother and grandmother as defendants in the action.[4] Shelborne did not answer the complaint, and a default judgment was entered against Shelborne for $200,000. Although Williams and Parker attempted to collect the judgment, they discovered that there were no assets to attach, and the record indicates that Williams never recorded the judgment with the probate court.[5]
According to Parker, even after a default judgment had been entered against Shelborne, Williams continued to promise Parker that he would make good on the promissory note. Specifically, Parker testified that Williams promised to pay him once an action settled in which Williams was representing the City of Birmingham against Browning-Ferris Industries, Inc. ("BFI"). After reading in the newspaper that the BFI action had settled and assuming that Williams had received his attorney fee in the BFI litigation, Parker telephoned Williams and inquired as to when he would receive his $100,000. According to Parker, Williams told him that he would not pay him. Frustrated, Parker filed a complaint with the Alabama State Bar against Williams, alleging that he had violated the Alabama Rules of Professional Conduct when he sued Shelborne, whom he had formerly represented in the transaction, on Parker's behalf. Parker testified that he filed the complaint hoping that the State Bar would be able to force Williams to pay him. As a result of the complaint, Williams was publicly reprimanded by the Alabama State Bar because of the conflict of interest created when he sued his former client based on the transaction in which he had represented the client.
Parker then sued Williams in the Jefferson Circuit Court, alleging breach of contract and fraud. Williams filed a counterclaim against Parker seeking $80,000 in unpaid attorney fees relating to the action Williams filed against Shelborne on Parker's behalf. A summary judgment was entered in favor of Williams on Parker's fraud claim, and the remaining claims proceeded to trial. The jury trial began on August 22, 2005. After Parker presented his case-in-chief, Williams moved for a judgment as a matter of law on the breach-of-contract claim; that motion was granted. The jury was then dismissed, and pursuant to the agreement of the parties, Williams's counterclaim for attorney fees was adjudicated as a bench trial. At the conclusion of the bench trial, the trial court entered a judgment as a matter of law for Parker on the counterclaim. Parker appealed, and Williams cross-appealed.
 II. Case No. 105004.0 — Parker's Appeal
Parker argues that the trial court erred in granting Williams's motion for a judgment as a matter of law made after Parker *Page 480 
presented his case-in-chief. He further argues that the trial court erred to reversal by excluding at trial a tape recording of a telephone conversation between Parker and Williams, which Parker asserts would have revealed Williams's agreement to guarantee Shelborne's loan.
 A. Standard of Review "`The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now referred to as a preverdict and a postverdict motion for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court's ruling On either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the nonmovant.'"
Glenlakes Realty Co. v. Norwood 721 So.2d 174, 177
(Ala. 1998) (quoting Bussey v. John Deere Co.,531 So.2d 860, 863 (Ala. 1988)).
 B. Analysis
During trial and on appeal, Parker concedes that no written contract exists between Williams and him by which Williams agrees to guarantee Parker's loan to Shelborne. Instead, he argues that there was a valid oral agreement by which Williams agreed to guarantee the loan. We disagree.
Alabama's Statute of Frauds, § 8-9-2, Ala. Code 1975, states, in pertinent part:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
 ". . . .
 "3) Every special promise to answer for the debt, default or miscarriage of another. . . ."
Parker argues that, as this Court enunciated in Fowler v.Oliver, 540 So.2d 54, 55 (Ala. 1989), "[t]he rule in Alabama is that the Statute of Frauds is applicable only to executory contracts, not to executed contracts."Fowler, however, is distinguishable from this case in that it dealt with an oral contract that exceeded one year. Our review of this Court's prior decisions does not indicate that the executed-contract exception to the Statute of Frauds has been applied to a guaranty. Given this Court's holding inBaker v. Hanks, 661 So.2d 1155 (Ala. 1995), that a purported oral promise by a third party "to see to it" that a loan was repaid would have to be in writing to be enforceable, we conclude that this Court has not extended the executed-contract exception to the Statute of Frauds to situations involving a guaranty. See also Posten v.Clem, 201 Ala. 529, 78 So. 883 (1918). Extending the executed-contract exception to "promise[s] to answer for the debt, default or miscarriage of another" would essentially negate the Statute of Frauds in that context because practically all disputes regarding a guaranty arise after the debt has been created. Accordingly, we hold that the executed-contract exception has no application here.
Because the alleged oral agreement between Williams and Parker falls within the purview of the Statute of Frauds, we need not consider Parker's claim regarding the trial court's refusal to allow the audiotape of the telephone conversation between him and Williams into evidence. Indeed, no matter how compelling Williams's purported promise may have been on the audiotape, *Page 481 
the oral promise would be irrelevant because § 8-9-2(3), Ala. Code 1975, requires such a guaranty to be in writing.
 III. Case No. 1050100 — Williams's Cross-Appeal
Williams argues that the trial court erred in determining that he was not entitled to attorney fees under the theory ofquantum meruit or quasi-contract relating to the action he filed on Parker's behalf against Shelborne. We disagree.
 A. Standard of Review
As stated previously, the trial court considered Williams's counterclaim during a bench trial conducted after the jury had been dismissed following the entry of a judgment as a matter of law on Parker's breach-of-contract claim against Williams. Ourore tenus standard of review is well settled. "`When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.'" Smith v. Muchia, 854 So.2d 85,92 (Ala. 2003) (quoting Allstate Ins. Co. v. Skelton,675 So.2d 377, 379 (Ala. 1996)); see also First Nat'l Bankof Mobile v. Duckworth, 502 So.2d 709 (Ala. 1987). As this Court has stated:
 "`The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.' Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to `disputed issues of fact,' whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672
(Ala. 1995). The ore tenus standard of review, succinctly stated, is as follows:
 "`[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.'"
Reed v. Board of Trs. for Alabama State Univ.,778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane,342 So.2d 358, 360 (Ala. 1977)). However, "that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts." Ex parteBoard of Zoning Adjustment of Mobile, 636 So.2d 415, 417
(Ala. 1994).
 B. Analysis
Initially we note that the record contains only the court reporter's transcript of the trial through the entry of the judgment as a matter of law on Parker's breach-of-contract claim; it does not contain the transcript of the portion of the bench trial regarding Williams's counter-claim. A transcript of that portion of the trial apparently exists because Williams quotes liberally from it in his brief.
 "The law is settled that it is the appellant's duty to ensure that the appellate court has a record from which it can conduct a review. Cooper Co. [v. Lester, 832 So.2d 628 (Ala. 2000)]; [Alfa Mut. Gen. Ins. Co. v.] Oglesby, [711 So.2d 938
(Ala. 1997)]; and Gotlieb v. Collat, 567 So.2d 1302 (Ala. 1990). Further, in the absence of evidence in the record, this Court will not assume error on the part of the trial court. Browning v. Carpenter, 596 So.2d 906 (Ala. 1992); Smith v. Smith 596 So.2d 1 (Ala. 1992); Totten v. Lighting Supply, Inc., 507 So.2d 502
(Ala. 1987)."
Zaden v. Elkus, 881 So.2d 993, 1009 (Ala. 2003). Williams (the appellant in this cross-appeal) had the burden of ensuring *Page 482 
that the record on appeal contains sufficient evidence to warrant a reversal of the judgment he challenges. Gotliebv. Collat, 567 So.2d 1302 (Ala. 1990). The law in Alabama is settled that when the record is silent as to evidence considered by the trial court, we must presume that the evidence considered was sufficient to support the trial court's judgment. Browning v. Carpenter, 596 So.2d 906
(Ala. 1992); Smith v. Smith 596 So.2d 1 (Ala. 1992); andTotten v. Lighting Supply, Inc., 507 So.2d 502
(Ala. 1987). Because we do not have a complete record to consider, we cannot assume error on the part of the trial court; thus we must affirm its judgment for Parker on Williams's counter-claim.
 IV. Conclusion
Because the trial court correctly determined that the Statute of Frauds was applicable to the purported oral agreement between Williams and Parker, we affirm the trial court's judgment for Williams on Parker's breach-of-contract claim (case no. 1050040). Because we do not have a complete record to review Williams's cross-appeal, we affirm its judgment for Parker on Williams's counterclaim (case no. 1050100).
1050040 — AFFIRMED.
1050100 — AFFIRMED.
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
[2] It appears that this was actually a Nigerian advance fee fraud ("AFF"), commonly referred to as a "419 Scam." These AFFs include the transfer of funds from over-invoiced contracts, contract fraud, conversion of hard currency, sale of crude oil below market prices, purchase of real estate, and disbursement of money from wills. Typically, the victims either are asked to allow substantial funds to be deposited into their bank account, for which they will receive a percentage of the funds, or are told that they are to inherit a substantial sum. The victims are informed that they must pay a tax or transaction fee before the funds are deposited to their accounts; the funds, of course, are never deposited. United States Department of State Bureau of International Narcotics and Law Enforcement Affairs, Nigerian Advance Fee Fraud (April 1997).
[3] Shelborne had previously borrowed $50,000 from another individual and in March or April 1998 had wired those funds to the "Presidency" in London, albeit to a different account.
[4] Williams named Shelborne's mother as a defendant because she had given Williams messages she had received from the "Presidency" and because she had tried to secure from her credit union the money that was to be sent to the "Presidency" as payment of the tax. Williams named Shelborne's grandmother as a defendant because she owned the house in which Shelborne and his mother resided.
[5] Although during trial the parties refer to recording the judgment with the circuit court, it is apparent to this Court that they were referring to the process of recording a judgment with the probate court to secure a lien.