BRYAN, Justice.
Daniel Ernest Hegarty, M.D., and the Monroeville Medical Clinic (“the Clinic”) appeal from a judgment entered by the Monroe Circuit Court in favor of Dixie Hudson in her medical-malpractice action. *946 We reverse and render a judgment for Dr. Hegarty and the Clinic.

Facts and Procedural History

In 2004, Hudson moved from Montgomery to Monroeville shortly before she was to give birth, and Dr. Hegarty, a board-certified family practitioner working at the Clinic, agreed to treat her.[1] Dr. Hegarty delivered Hudson’s baby via cesarian-section (“C-section”) on June 23, 2004. During the operation, but after the baby had been delivered, the placenta became detached from the baby’s umbilical cord. Dr. Hegarty searched within and beyond Hudson’s uterus but was unable to locate the placenta. Dr. Hegarty requested assistance from his partner at the time, Dr. Angela Powell, who also tried to locate the placenta but was unsuccessful. Dr. Powell placed a telephone call to Dr. Jeff Fahy, a board-certified obstetrician-gynecologist (“Ob-Gyn”), for advice and guidance regarding the missing placenta. Based on Dr. Fahy’s recommendations to Dr. Powell, which were relayed to Dr. Hegarty, Dr. Hegarty closed Hudson’s incision without retrieving the placenta, with a plan for follow-up care. Following the operation, Hudson experienced severe pain in her abdomen and dramatic weight loss. Dr. Hegarty eventually ordered a CT scan to be performed on July 15, 2004, and, at that time, a mass was located in Hudson’s abdomen. Dr. Hegarty then referred Hudson to Dr. Fahy, who subsequently referred her to a doctor in Mobile, who identified and surgically removed the retained placenta from Hudson’s abdomen.[2]
In 2006, Hudson sued Dr. Hegarty, the Clinic, and the Monroe County Hospital (“the Hospital”), along with several fictitiously named defendants, alleging one count of medical negligence related to Dr. Hegarty’s failure to remove the placenta from Hudson. Hudson alleged that Dr. Hegarty, the Clinic, and the Hospital had breached the applicable standard of care in a number of ways. Dr. Hegarty, the Clinic, and the Hospital each filed an answer denying the allegation of negligence and denying any breach of the standard of care.
In 2010, the trial court entered a summary judgment dismissing the claim against the Hospital, which judgment was made final on August 17, 2011, by a Rule 54(b), Ala. R. Civ. P., certification. The case proceeded to trial against Dr. Hegarty and the Clinic (hereinafter referred to collectively as “the defendants”). Before trial, Hudson identified Dr. Gregory Banks as an expert witness who would testify on her behalf as to Dr. Hegarty’s alleged breach of the standard of care. After Dr. Banks was deposed, the defendants moved the trial court to preclude Dr. Banks from testifying at trial and to strike his affidavit and deposition testimony. The defendants argued that, pursuant to § 6-5-548, Ala. Code 1975,[3] Dr. Banks, who was a board-certified Ob-Gyn,[4] was not a similarly situated health-care provider to Dr. Hegarty *947 and, therefore, could not testify as to the standard of care Dr. Hegarty should have exercised with regard to the removal of the placenta. The trial court denied the defendants’ motion. The defendants then filed a motion in limine seeking, among other things, to preclude Dr. Banks from testifying as an expert. The trial court denied the motion insofar as it related to Dr. Banks’s testimony.
The case was tried before a jury. Dr. Banks testified that, as a board-certified Ob-Gyn, he could deliver babies and that Dr. Hegarty, as a board-certified family practitioner, could also deliver babies. He testified further that, although there was commonality in how babies are delivered, Ob-Gyn and family practice are separate and distinct medical specialties and that he had never been trained, licensed, or board-certified as a family practitioner.
Dr. Banks testified that Dr. Hegarty was practicing obstetrics when he delivered Hudson’s baby. According to Dr. Banks, the practice of obstetrics “primarily ... involves taking care of a mom ... up to the time of her delivery, taking care of her through the delivery, and then after the delivery process.” He stated that Dr. Hegarty deviated from the applicable standard of care when he failed to remove the placenta from Hudson when he performed the C-section and that a second deviation from the standard of care, “which hinge[d] on the first,” occurred when Dr. Hegarty failed to perform a CT scan immediately after the conclusion of the C-section, or at least the next day.
However, Dr. Banks also testified that Dr. Hegarty’s obstetrical treatment of Hudson fell within the scope of practice for a board-certified family practitioner because Hudson was a low-risk obstetric patient. Dr. Banks also stated that, in performing the C-section on Hudson, Dr. Hegarty was doing what he was fully authorized to do based on his training and education as a family practitioner and that his actions were within the scope of family practice.
Hudson attempted to argue, however, that, in spite of his family-practice certification, Dr. Hegarty had held himself out as a specialist in obstetrics. Hudson relied on Dr. Hegarty’s curriculum vitae (“CV”), in which he had written that he had practiced “complete obstetrics and pediatrics and family medicine” while working at At-more Complete Family Health. Dr. He-garty testified that the term “complete” on his CV meant “from ... birth until old age.” Dr. Hegarty’s CV also stated that he had done a fellowship in rural family medicine, where he had received “intensive training in high risk and operative obstetrics.”
Dr. Banks testified that, based on Dr. Hegarty’s CV and his hospital credentials, Dr. Hegarty was a family practitioner who also practiced obstetrics. Dr. Banks also testified that performing “complete obstetrics” for a low-risk patient is within the scope of the family-practice specialty, that Hudson was a low-risk patient, and that Dr. Hegarty could care for Hudson within his experience and training as a board-certified family practitioner.
At the close of Hudson’s case, and again at the close of all the evidence, the defendants moved for a judgment as a matter of law, arguing, among other things, that Hudson had failed to proffer expert testimony from a similarly situated health-care provider, pursuant to § 6-5-548. The trial court denied both motions.
The trial court determined that a question of fact existed as to whether Dr. He-garty had held himself out as a specialist in obstetrics so as to bring himself within the standard of care expected of obstetricians and, therefore, whether Dr. Banks *948 was qualified to testify against Dr. Hegarty as a similarly situated health-care provider. Thus, the trial court charged the jury with deciding whether Dr. Hegarty had acted “beyond that which a board certified family practitioner who had obstetrics training and delivered babies would typically participate in and that such was his status at the time he rendered care to Dixie Hudson.” The trial court noted that if Dr. Hegarty had acted beyond the scope of his specialty in his care of Hudson, Dr. Banks could testify as a similarly situated health-care provider as to the standard of care that should apply. However, the trial court’s instructions to the jury also stated that, if it determined that Dr. Banks’s testimony should not be considered, “there would be no evidence before [them] ... that Dr. Hegarty breached the applicable standard of care.” The defendants and Hudson objected to the trial court’s allowing the jury to determine the admissibility of Dr. Banks’s testimony.
On September 16, 2011, the jury returned a verdict in favor of Hudson in the amount of $150,000. The trial court entered a final judgment based on that verdict. The defendants filed a renewed motion for a judgment as a matter of law and, in the alternative, a motion for new trial. At the hearing on the postjudgment motion, the trial court stated:
“[T]he reason that I submitted [the question of Dr. Banks’s qualification as an expert] to the jury was because there was a contest in the facts about whether or not [Dr. Hegarty] did go beyond his specialty and I thought that was a fact question to be determined by the jury. However, if I had to rule as a matter of law, I would have allowed Dr. Banks to testify.
“So, if the Supreme Court wonders does this Judge think that [Dr. Hegarty] should have been allowed to testify, and if we told him, you have got to decide that, what would he decide? I would decide that he could testify, so, you know, if I erred in submitting the issue to the jury and if it should have been determined by me, my determination would be the same that the jury’s was.... ”
The trial court explained that, by stating in his CV that he did “complete obstetrics and pediatrics and family medicine,” Dr. Hegarty “held himself out to be more than he was and thus went outside of his specialty and I so hold [that] he held himself out as doing more than a family practitioner would do in my opinion.” Therefore, the trial court concluded, the jury could have considered Dr. Banks’s testimony as a similarly situated health-care provider, pursuant to § 6-5-548, as to the alleged breach of the standard of care. The trial court denied the defendants’ motions, and the defendants appealed.

Issues

The defendants contend that the trial court erred in allowing Dr. Banks to testify as an expert regarding the applicable standard of care and Dr. Hegarty’s alleged breach thereof. The defendants also argue that the trial court’s charge to the jury was improper and that the judgment against Dr. Hegarty violates public policy.

Standard of Review

“ ‘ “The standard of review applicable to whether an expert should be permitted to testify is well settled. The matter is ‘largely discretionary with the trial court, and that court’s judgment will not be disturbed absent an abuse of discretion.’ Hannah v. Gregg, Bland & Berry, Inc., 840 So.2d 889, 850 (Ala.2002). We now refer to that standard as a trial *949 court’s ‘exceeding its discretion.’ See, e.g., Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc., 901 So.2d 84, 106 (Ala.2004) (‘Our review of the record supports the conclusion that the trial court did not exceed its discretion in finding that Jones was properly qualified as an expert under Rule 702[, Ala. R. Evid.,] and in considering his testimony.’). However, the standard itself has not changed.”
“ ‘Kyser v. Harrison, 908 So.2d 914, 918 (Ala.2005).’
“Robinson v. Baptist Health Sys., Inc., 24 So.3d 1119, 1125 (Ala.Civ.App.2009).
“ ‘ “ ‘The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now referred to as a pre-verdict and a postverdict motion for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court’s ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant.’ ”
“ ‘Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala.1998) (quoting Bussey v. John Deere Co., 581 So.2d 860, 863 (Ala.1988)).’
“Parker v. Williams, 977 So.2d 476, 480 (Ala.2007).”
Springhill Hosps., Inc. v. Critopoulos, 87 So.3d 1178, 1180-81 (Ala.2011).

Discussion

The defendants first argue that they are entitled to a judgment as a matter of law because, they argue, Dr. Banks was not a similarly situated health-care provider to Dr. Hegarty under § 6-5-548, and, thus, he should not have been permitted to testify against Dr. Hegarty as to the alleged breach of the standard of care. In Holcomb v. Carraway, 945 So.2d 1009, 1012-13 (Ala.2006), this Court stated:
“The plaintiff in a medical-malpractice action must prove by substantial evidence that the defendant health-care provider ‘failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.’ § 6-5-548(a), Ala.Code 1975. To meet this burden, a plaintiff ordinarily must present expert medical testimony; however, such expert testimony is allowed only from a ‘similarly situated health care provider.’ See § 6-5-548(e), Ala. Code 1975; Leonard v. Providence Hosp., 590 So.2d 906 (Ala.1991).
“Section 6-5-548, a provision of the Alabama Medical Liability Act, § 6-5-504 et seq., Ala.Code 1975 (‘the AMLA’), provides two definitions of a ‘similarly situated health care provider,’ depending upon whether the defendant health-care provider is a ‘specialist’ or a ‘nonspeeialist.’ See § 6-5-548(b) and (c), Ala.Code 1975....”
Section 6-5-548(c) provides:
“(c) Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, if the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced in a medical specialty, and holds himself or herself out as a specialist, a ‘similarly situated health care provider’ is one who meets all of the following requirements:
“(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
*950 “(2) Is trained and experienced in the same specialty.
“(3) Is certified by an appropriate American board in the same specialty.
“(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.”
Regarding the applicability of § 6-5-548(c), this Court has stated:
“In order to determine whether the defendant health-care provider qualifies as a specialist, we must first determine the field of medical practice in which the negligence is alleged to have occurred. If the defendant health-care provider is a specialist in the field of practice in which the alleged negligence occurred, then the proffered expert witness must also be a specialist in that field, under § 6-5-548(c), Ala.Code 1975. See also Medlin v. Crosby, 583 So.2d 1290, 1293 (Ala.1991).”
Holcomb, 945 So.2d at 1013.
In this case, it was undisputed that Dr. Hegarty was certified by an American board as a specialist in family practice, that he was trained and experienced as a specialist in family practice, and that he held himself out as a specialist in family practice. Hudson alleged that Dr. Hegarty breached the applicable standard of care during his performance of her C-section when he failed to remove the placenta from her abdomen. Dr. Banks testified, and it was not disputed, that Dr. Hegarty’s performance of Hudson’s C-seetion fell within the scope of his family-practice specialty.[5] Because it was undisputed that Dr. Hegarty was certified in and practicing his specialty of family prae-tice when the alleged breach of the standard of care occurred, we conclude that subsection § 6 — 5—548(c) applied.
Because Dr. Hegarty was a specialist for purposes of § 6-5-548(c), § 6-5-548(e), Ala.Code 1975, also applies. See Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001) (holding that, if the defendant health-care provider “is not a specialist under subsection (c), § 6-5-548(e) of the [AMLA] does not apply .... ”). Section 6-5-548(e) provides:
“(e) The purpose of this section is to establish a relative standard of care for health care providers. A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he or she is a ‘similarly situated health care provider’ as defined above. It is the intent of the Legislature that in the event the defendant health care provider is certified by an appropriate American board or in a particular specialty and is practicing that specialty at the time of the alleged breach of the standard of care, a health care provider may testify as an expert witness with respect to an alleged breach of the standard of care in any action for injury, damages, or wrongful death against another health care provider only if he or she is certified by the same American board in the same specialty.”
(Emphasis added.)
Dr. Hegarty is certified by the American Board of Family Medicine; Dr. Banks is certified by the American College *951 of Obstetrics and Gynecology. Clearly, Dr. Hegarty and Dr. Banks are not certified in the same specialty by the appropriate American board. Because Dr. Hegarty is certified by the American Board of Family Medicine, because he was practicing in that specialty at the time he performed the C-section on Hudson, and because Dr. Banks was not certified by the same American board in the same specialty, pursuant to § 6-5-548(e) Dr. Banks was not permitted to testify as a similarly situated health-care provider to the standard of care to which Dr. Hegarty was to be held. The fact that there is some overlap or commonality in the practice of a board-certified family practitioner and a board-certified Ob-Gyn (i.e., that both were trained to perform C-sections) is irrelevant. In Johnson v. Price, 743 So.2d 436, 438 (Ala.1999), this Court held:
“The fact that [two certifying boards] may have the same purpose, that they may certify providers for the same procedures, or that they may require the same qualifications would be irrelevant. Section 6-5-548(e) plainly states that if the two providers are not certified by the same organization, then one cannot testify as to the standard of care applicable to the other. All questions of propriety, wisdom, necessity, utility, and expediency of legislation are exclusively for the Legislature and are questions with which this Court has no concern.”
(Emphasis added.)
For these reasons, we conclude that the trial court exceeded its discretion when it permitted Dr. Banks to testify as a similarly situated health-care provider in this case. The only evidence indicating that Dr. Hegarty breached the applicable standard of care came from Dr. Banks. Because that testimony was improperly admitted into evidence and because there was no other testimony as to the standard of care, the trial court erred in denying the defendants’ motions for a judgment as a matter of law. Accordingly, we reverse the trial court’s judgment and render a judgment as a matter of law in favor of the defendants.[6]
REVERSED AND JUDGMENT RENDERED.
MOORE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ„ concur.
MURDOCK, J., concurs specially.

. Dr. Hegarty had been certified in family practice by the American Board of Family Practice, which is now known as the American Board of Family Medicine. Family practice is a defined medical specialty that, Dr. Hegarty testified, includes training in various practice areas, including geriatrics, pediatrics, pulmonology, cardiology, obstetrics, gynecology, and emergency medicine.

. A “retained placenta” is an "incomplete separation of the p[lacenta] and its failure to be expelled at the usual time after delivery of the child.” Stedman's Medical Dictionary 1389 (27th ed.2000).

. The pertinent parts of § 6-5-548 are quoted infra.

. Dr. Banks had been board-certified as an Ob-Gyn by the American College of Obstetrics and Gynecology.

. Hudson and the trial court relied on statements in Dr. Hegarty’s CV that he practiced "complete obstetrics” as evidence indicating that he was practicing outside his family-practice specialty. However, statements in a CV as to the scope of his practice at a prior facility do not constitute evidence indicating that Dr. Hegarty acted outside his specialty at the time of the alleged breach of the standard of care in this case.

. Our decision to reverse and to render a judgment on this basis pretermits discussion of the remaining issues raised by the defendants on appeal.