# SUPREME COURT OF THE UNITED STATES

KPMG LLP *v*. ROBERT COCCHI ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT
COURT OF APPEAL OF FLORIDA, FOURTH DISTRICT

No. 10–1521.  Decided November 7, 2011

PER CURIAM.

Agreements to arbitrate that fall within the scope and coverage of the Federal Arbitration Act (Act), 9 U. S. C. §1 *et seq.*, must be enforced in state and federal courts. State courts, then, "have a prominent role to play as enforcers of agreements to arbitrate." *Vaden* v. *Discover Bank*, 556 U. S. 49, 59 (2009).

The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. See *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 217 (1985). From this it follows that state and federal courts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration. See *ibid.*

In this case the Fourth District Court of Appeal of the State of Florida upheld a trial court's refusal to compel arbitration of respondents' claims after determining that two of the four claims in a complaint were nonarbitrable. Though the matter is not altogether free from doubt, a fair reading of the opinion indicates a likelihood that the Court of Appeal failed to determine whether the other two claims in the complaint were arbitrable. For this reason, the judgment of the Court of Appeal is vacated, and the case remanded for further proceedings.

*    *    *

Respondents are 19 individuals and entities who bought limited partnership interests in one of three limited partnerships, all known as the Rye Funds. The Rye Funds were managed by Tremont Group Holding, Inc., and Tremont Partners, Inc., both of which were audited by KPMG. The Rye Funds were invested with financier Bernard Madoff and allegedly lost millions of dollars as a result of a scheme to defraud. Respondents sued the Rye Funds, the Tremont defendants, and Tremont's auditing firm, KPMG.

Only the claims against KPMG are at issue in this case. Against KPMG, respondents alleged four causes of action: negligent misrepresentation; violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. 501.201 *et seq.* (2010); professional malpractice; and aiding and abetting a breach of fiduciary duty. Respondents' basic theory was that KPMG failed to use proper auditing standards with respect to the financial statements of the partnerships. These improper audits, respondents contend, led to "substantial misrepresentations" about the health of the funds and resulted in respondents' investment losses. 51 So. 3d 1165, 1168 (Fla. App. 2010).

KPMG moved to compel arbitration based on the audit services agreement that existed between it and the Tremont defendants. That agreement provided that "[a]ny dispute or claim arising out of or relating to . . . the services provided [by KPMG] . . . (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved" either by mediation or arbitration. App. to Pet. for Cert. 63a. The Florida Circuit Court of the Fifteenth Judicial Circuit Palm Beach County denied the motion.

The Court of Appeal affirmed, noting that "[n]one of the plaintiffs . . . expressly assented in any fashion to [the audit services agreement] or the arbitration provision." 51

So. 3d, at 1168. Thus, the court found, the arbitration clause could only be enforced if respondents' claims were derivative in that they arose from the services KPMG performed for the Tremont defendants pursuant to the audit services agreement. Applying Delaware law, which both parties agreed was applicable, the Court of Appeal concluded that the negligent misrepresentation and the violation of FDUTPA claims were direct rather than derivative. A fair reading of the opinion reveals nothing to suggest that the court came to the same conclusion about the professional malpractice and breach of fiduciary duty claims. Indeed, the court said nothing about those claims at all. Finding "the arbitral agreement upon which KPMG relied would not apply to the direct claims made by the individual plaintiffs," *id.,* at 1167, the Court of Appeal affirmed the trial court's denial of the motion to arbitrate.

Respondents have since amended their complaint to add a fifth claim. Citing the Court of Appeal's decision, the trial court again denied KPMG's motion to compel arbitration.

The Federal Arbitration Act reflects an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 631 (1985); *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 24–25 (1983) (noting that "questions of arbitrability [must]. . . be addressed with a healthy regard for the federal policy favoring arbitration"). This policy, as contained within the Act, "requires courts to enforce the bargain of the parties to arbitrate," *Dean Witter*, *supra*, at 217, and "cannot possibly require the disregard of state law permitting arbitration by or against nonparties to the written arbitration agreement," *Arthur Andersen LLP* v. *Carlisle*, 556 U. S. 624, 630, n. 5 (2009) (emphasis deleted). Both parties agree that whether the claims in the complaint are arbitrable turns on the question whether they must be deemed

direct or derivative under Delaware law. That question of state law is not at issue here. What is at issue is the Court of Appeal's apparent refusal to compel arbitration on any of the four claims based solely on a finding that two of them, the claim of negligent misrepresentation and the alleged violation of the FDUTPA, were nonarbitrable.

In *Dean Witter*, the Court noted that the Act "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " 470 U. S., at 218 (quoting 9 U. S. C. §2). The Court found that by its terms, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." 470 U. S., at 218 (emphasis in original). Thus, when a complaint contains both arbitrable and nonarbitrable claims, the Act requires courts to "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.*, at 217. To implement this holding, courts must examine a complaint with care to assess whether any individual claim must be arbitrated. The failure to do so is subject to immediate review. See *Southland Corp.* v. *Keating*, 465 U. S. 1, 6–7 (1984).

The Court of Appeal listed all four claims, found that two were direct, and then refused to compel arbitration on the complaint as a whole because the arbitral agreement "would not apply to the direct claims." 51 So. 3d, at 1167. By not addressing the other two claims in the complaint, the Court of Appeal failed to give effect to the plain meaning of the Act and to the holding of *Dean Witter*. The petition for certiorari is granted. The judgment of the Court of Appeal is vacated, and the case is remanded. On

remand, the Court of Appeal should examine the remaining two claims to determine whether either requires arbitration.

*It is so ordered.*