Filed 10/7/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| YONGTONG LIU,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MINISO DEPOT CA, INC., et al.,<br><br>    Defendants and Appellants. | B338090<br><br>(Los Angeles County<br>Super. Ct. No. 23STCV24321) |

APPEAL from an order of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge.  Affirmed.

Innovative Legal Services, Edward S. Wells and Richard Q. Liu for Defendants and Appellants.

Akopyan Law Firm and Ani M. Akopyan for Plaintiff and Respondent.

————————————

# INTRODUCTION

The #MeToo movement highlighted concerns that compelled arbitration of sexual harassment claims can perpetuate unacceptable behavior and minimize its consequences by diverting such claims from public court proceedings into a private forum. In response, Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA; 9 U.S.C. §§ 401-402).[1] As codified, the EFAA amended the Federal Arbitration Act (FAA; § 1 et seq.), and was placed within the FAA's other provisions. Section 402, added by the EFAA, states, "Notwithstanding any other provision of [the FAA], at the election of the person alleging conduct constituting a sexual harassment dispute . . . , no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute." (§ 402(a).)

This matter requires that we determine whether the EFAA exempts from arbitration all causes of action in a complaint that asserts both sexual harassment and non-sexual harassment claims, or whether a trial court may still compel arbitration of the non-sexual harassment claims. Defendants Miniso Depot CA, Inc., USA Miniso Depot, Inc., and Lin Li (collectively, Miniso) appeal the trial court's denial of their motion to compel arbitration of certain claims asserted against them by former Miniso employee and plaintiff Yongtong "Jade" Liu. Miniso concedes that the EFAA exempts Liu's claims alleging sexual

---

[1] All unspecified statutory references are to title 9 of the United States Code.

harassment from arbitration, but contends that the trial court erred in failing to compel arbitration of Liu's other employment-related claims.

We agree with our colleagues in Division Three of this appellate district, who recently concluded in *Doe v. Second Street Corp.* (Sept. 30, 2024, B330281) ___ Cal.App.5th ___ [2024 WL 4350420] that the plain language of the EFAA exempts a plaintiff's entire case from arbitration where the plaintiff asserts at least one sexual harassment claim subject to the act. Here, at least one of Liu's claims is subject to the EFAA, and thus the trial court did not err in refusing to compel Liu to arbitrate any of her claims.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Liu's Lawsuit

Liu sued Miniso and unnamed Doe defendants on October 5, 2023. Liu alleged that Li was the chief executive officer of the Miniso entities. According to Liu, Miniso owns and operates retail stores which sell "goods such as toys, collectables, stationary, cosmetics, and household items."

Liu alleged she was hired by Miniso in around April 2021 as a human resources administrator, and was paid an hourly wage. In around January 2022, Miniso changed Liu's job title and, although her duties "remained generally the same," she was classified as exempt from various wage and hour requirements imposed by the Labor Code, Industrial Welfare Commission Wage Orders, and regulations. Liu alleged that Miniso misclassified her as an exempt employee, and as a result improperly failed to pay her for all the hours she worked, to pay her the minimum wage, to pay the required rates for overtime,

and to provide her with appropriate rest and meal breaks and with accurate wage statements.

Liu, who alleges she "identifies as lesbian and dresses in a unisex non-gender specific style," further asserted that during her employment "[she] and others in her presence were subjected to unwelcome, severe and pervasive sexual harassment, sex discrimination and race discrimination, sexual orientation/gender harassment and sexual harassment/gender discrimination." Liu alleged the following specific incidents and types of offensive conduct: Li and others at Miniso commented on Liu's appearance during company meetings; Li twice suggested during meetings that if Miniso's products looked like Liu then no one would purchase them; Li remarked that Liu was unattractive because she was " 'too skinny' " (italics omitted) and that she needed to eat more to have more curves; during meetings Li compared Liu's body with that of another female employee; Li would compare other female employees with toys sold by Miniso; male managers referred to female employees as " 'little girls' " (italics omitted); "[i]n [her] presence, [d]efendants would refer to homosexuals as 'creepy,' and would comment that 'a man should do what a man should do, and a woman should do what a woman should do' " (italics omitted); while discussing a product decorated with a rainbow, Li looked at Liu and commented, " 'who would want to buy that' " (italics omitted); and "[d]efendants . . . mockingly refer[ed] to [Liu] as 'Brother Jade' " (italics omitted).

Liu also alleged that Miniso asked her, in her position in human resources, to participate in practices which she considered to be illegal, including failing to pay female employees "equally or comparably to male counterparts," "hir[ing] only young Korean employees," and falsifying "immigration-related documents" to

4

facilitate Miniso hiring Chinese individuals who could not legally work in the United States. Liu alleged she complained about these practices to Li and others and refused to comply. Liu alleged that after she refused to participate in various practices she believed were illegal, she faced increased harassment and discrimination.

Liu alleged, "As a result of the retaliation and working long hours, for which she was not paid, and the demand that she engage in conduct that she believed violated the law, in or around May 2023, [her] health declined, she began to suffer severe emotional distress, manifesting itself in migraines, anxiety, and depression." She alleged that her working conditions became "intolerable" and that "[a]ny reasonable person would have felt compelled to resign instead of continuing to work without pay, while enduring sexual harassment, sexual orientation/gender based discrimination and harassment, and being forced to violate the law." In June 2023, Liu informed Miniso she was resigning; she alleges this constituted a constructive termination based on her sex and sexual orientation/gender identity, and in retaliation for her whistleblowing.

Based on these allegations, Liu asserted the following claims: violation of various wage and hour requirements set forth in the Labor Code and California Code of Regulations, title 8, section 11040; sexual harassment in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.); sex discrimination in violation of the FEHA; sexual orientation/gender identity harassment in violation of the FEHA; sexual orientation/gender identity discrimination in violation of the FEHA; retaliation for complaining about unlawful activities in violation of Labor Code section 1102.5; retaliation for refusing

5

to participate in unlawful activities in violation of Labor Code section 1102.5; constructive termination in violation of public policy; and intentional infliction of emotional distress. Liu sought compensatory damages, statutory penalties, punitive damages, injunctive relief, and attorney's fees.

**B.    Miniso's Motion to Compel Arbitration**

On January 31, 2024, Miniso filed a motion to compel arbitration of all of Liu's claims under the FAA. Miniso relied on an arbitration agreement it claimed Liu had signed when she accepted Miniso's job offer. The agreement stated, in relevant part: "To ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Miniso, you and Miniso agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding, and confidential arbitration in your county and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ('JAMS'), or its successors, under the then current rules of JAMS for employment disputes." (Bold and italics omitted.) The agreement also provided that "any dispute relating to the interpretation, applicability, validity, or enforceability of [the agreement] . . . shall be governed by the [FAA]."

Miniso argued that, under the terms of the arbitration agreement, "Liu must arbitrate her entire [c]omplaint, because it consists solely of Labor Code counts, FEHA claims, and employment and other torts, all of which 'arise in connection with [Liu's] employment with Miniso.'" Miniso contended that the EFAA did not apply because Liu's allegations of sexual

6

harassment failed to state a claim for harassment and, thus, her complaint effectively had no harassment claim. In particular, Miniso argued that Liu's complaint concerned "mere annoying, offensive, and stray remarks," which could not state a viable harassment claim under the FEHA. (See *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283 ["Although annoying or 'merely offensive' comments in the workplace are not actionable, conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment is unlawful"].)

## C. Liu's Opposition

Liu opposed Miniso's motion to compel arbitration. As relevant to this appeal, Liu contended that the EFAA permitted her to opt out of the arbitration agreement. She argued there was no requirement she had to state sufficient facts to support a cognizable harassment claim in order to invoke the EFAA. She further argued that she had stated a viable sexual harassment claim under the FEHA.

## D. Miniso's Reply

Miniso filed a reply brief in which it reiterated its argument that Liu had failed to allege sufficient facts to support a sexual harassment claim under the FEHA. Miniso further argued, in the alternative, that even if the EFAA applied to Liu's sexual harassment claims, the act did not apply to Liu's other claims and, as a result, the trial court was required to sever the other claims and compel them to be arbitrated.

## E. The Trial Court's Ruling

On March 19, 2024, the trial court denied Miniso's motion to compel arbitration. Addressing Miniso's argument that the EFAA did not apply because Liu had not alleged sufficient facts

to support a sexual harassment claim under the FEHA, the court stated, "there is no controlling authority that employs this sufficiency of the pleadings standard. Further, and more importantly, the [c]omplaint adequately states a claim for sexual harassment."

The court also rejected Miniso's argument that, even if the EFAA applied to Liu's sexual harassment claim, the act did not exempt Liu's other claims from arbitration. The court relied on two federal district court opinions, *Johnson v. Everyrealm, Inc.* (S.D.N.Y. 2023) 657 F.Supp.3d 535, 561 and *Turner v. Tesla, Inc.* (N.D.Cal. 2023) 686 F.Supp.3d 917, 925, which both held that when a complaint includes a claim for sexual harassment to which the EFAA applies the arbitration agreement is unenforceable "with respect to [the plaintiff's] entire case." (*Ibid.*)

## DISCUSSION

Miniso challenges the denial of its motion to compel arbitration. (See Code Civ. Proc., § 1294, subd. (a) ["[a]n order dismissing or denying a petition to compel arbitration" is appealable].) Abandoning some of the arguments it made before the trial court, Miniso now concedes that the EFAA applies to Liu's claims for sexual harassment and for sexual orientation/gender identity harassment. In accord with this concession, we assume Liu alleged facts stating a legally cognizable sexual harassment claim.[2]

_____

[2] Federal district court decisions have interpreted the EFAA to apply only where the plaintiff's sexual harassment related claims are capable of surviving a challenge at the

Miniso's sole appellate contention is that the trial court erred in concluding the parties' arbitration agreement was unenforceable as to *all* of Liu's claims, and not just as to the two harassment claims. In other words, Miniso contends the trial court should have compelled Liu to arbitrate all of her claims except for the two harassment claims. We disagree. Under the EFAA, when a plaintiff's lawsuit contains at least one claim that fits within the scope of the act, the arbitration agreement is unenforceable as to all claims asserted in the lawsuit.[3]

pleading stage, because without such a procedural safeguard a plaintiff could avoid complying with an otherwise valid arbitration agreement by simply adding a baseless sexual harassment claim. (See, e.g., *Yost v. Everyrealm, Inc.* (S.D.N.Y. 2023) 657 F.Supp.3d 563, 586 [allowing the EFAA to apply to sexual harassment related claims that do not satisfy the federal "plausibility" standard for a motion to dismiss "could destabilize the FAA's statutory scheme" because "[i]t would enable a plaintiff to evade a binding arbitration agreement—as to wholly distinct claims, and for the life of a litigation—by the expedient of adding facially unsustainable and quickly dismissed claims of sexual harassment"].) This appeal does not require us to opine on what threshold, if any, a plaintiff's sexual harassment related claims must meet before the EFAA becomes applicable because there is no dispute that Liu has adequately pleaded at least two sexual harassment related claims.

[3] Liu contends that Miniso has forfeited its argument that the court should have compelled arbitration of Liu's non-sexual harassment claims because it did not assert the argument until its reply brief in the trial court. We decline to find a forfeiture because, as Miniso points out, the trial court addressed that argument on the merits. Liu relies on *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168,

## A. Standard of Review

In deciding a motion to compel arbitration, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

Where, as is the case here, " 'the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.' " (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541; see *Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 221 ["We review statutory interpretation issues de novo"].) In addition, "[i]t is the ruling, and not the reason for the ruling, that is reviewed on appeal." (*Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 906-907.)

---

but the court there recognized that "a Court of Appeal is at liberty to reject a waiver claim and consider the issue on the merits" (*id.* at p. 179), and that a waiver will likely be found on appeal when "the opposing party did not have an opportunity to argue [the issue] and the trial court did not have an opportunity to consider [it]" (*id.* at p. 178). The trial court here had an opportunity to consider the issue and did in fact address it. In addition, although Liu was unable to address the issue in her trial court opposition brief, our review is de novo and she has had a full opportunity to present her arguments on appeal. *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, cited by Liu, is distinguishable because there the respondent lost the opportunity to present evidence in the trial court (*id.* at pp. 769-770), which is not a concern here with regard to the legal issue presented by Miniso.

## B.    The FAA and EFAA

The parties' arbitration agreement provides that "interpretation, applicability, validity, or enforceability" of the agreement is governed by the FAA.  As neither party disputes that the FAA governs, we apply the FAA to their dispute. (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1115 [FAA procedural rules govern where the parties have expressly agreed that the FAA applies]; see *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394 ["parties to an arbitration agreement [may] *expressly* designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law"].)

As relevant here, the FAA provides, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."  (§ 2.)

Chapter 4 of the FAA, referenced in section 2, was added by the EFAA, which became effective on March 3, 2022.  It consists of sections 401 and 402.  Section 402 provides, in relevant part, "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute . . . , no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute."  (§ 402(a).)  As relevant here, section 401 defines " 'predispute arbitration agreement' " as "any agreement to arbitrate a dispute that had not yet arisen at

11

the time of the making of the agreement." (§ 401(1).) In addition, it defines " 'sexual harassment dispute' " as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." (§ 401(4).)[4]

Under section 402, the applicability of the EFAA is governed by federal law and is to be decided by a court, as opposed to an arbitrator. (§ 402(b).)

## C.     The EFAA Makes the Parties' Arbitration Agreement Unenforceable as to Liu's Entire Case

In interpreting both state and federal statutes, "our primary task is to determine the lawmaker's intent." (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1095.) "We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.] ' " 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]" [Citation.]' [Citation.]" (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.) "[W]hen 'the statute's language is

---

[4] Section 402(a) contains parallel provisions regarding a "sexual assault dispute" which section 401(3) defines as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 [of the United States Code] or similar applicable Tribal or State law, including when the victim lacks capacity to consent." As Liu does not contend that her case related to any " 'sexual assault dispute' " within the meaning of section 401(3), we confine our discussion to those provisions of the EFAA relating to a " 'sexual harassment dispute' " under section 401(4).

12

plain, "the sole function of the courts" '—at least where the disposition required by the text is not absurd—' "is to enforce it according to its terms." ' [Citation.]" (*Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.* (2000) 530 U.S. 1, 6 [120 S.Ct. 1942, 147 L.Ed.2d 1].)  However, "[t]o the extent statutory language is ambiguous or open to more than one reasonable interpretation, we may turn to legislative history for guidance." (*Tuolumne Jobs & Small Business Alliance*, at p. 1040.)

Miniso contends that the EFAA's language is clear and gives a plaintiff such as Liu the option to invalidate an arbitration agreement only with respect to claims alleging sexual harassment as defined in section 401(4).  According to Miniso, where an action contains one or more sexual harassment claims and one or more other claims, the court must compel arbitration of any non-sexual harassment claim(s).  We agree with Miniso that the language of the EFAA is clear but come to the opposite conclusion as to the meaning of the statutory language.

As relevant here, section 402(a) provides, "at the election of the person alleging conduct constituting a sexual harassment dispute," here Liu, "no predispute arbitration agreement . . . shall be valid or enforceable *with respect to a case* which is filed under . . . [s]tate law and relates to . . . the sexual harassment dispute." (§ 402(a), italics added.)  For purposes of resolving this appeal, the key word in section 402(a) is "case."  The common meaning of the word, in the context of litigation, is an action or suit.  (See Merriam-Webster, https://www.merriam-webster.com/dictionary/case [defining "case" in part as "a suit or action in law or equity"], as of Oct. 3, 2024; Black's Law Dictionary (12th ed. 2024) [defining "case" in part as "[a] civil or criminal proceeding, action, suit, or controversy at law or in

13

equity"].) This accords with federal practice, with which Congress is familiar, in which a plaintiff commences a case, that is to say a civil action or proceeding, by filing a complaint. (See Fed. Rules Civ. Proc., rules 1, 3.) Under the EFAA, if a plaintiff's action "relates to . . . the sexual harassment dispute," then, at the plaintiff's election, the arbitration agreement is not valid or enforceable "with respect to" the entire case/action. (§ 402(a).)

Miniso's interpretation is flawed because one cannot reasonably interpret section 402(a) as invalidating an arbitration agreement only with respect to certain claims within a case. The term Congress chose—"case"—is different from the term "claim." (See Black's Law Dictionary, *supra*, [defining "claim" in part as, "[a] demand for money, property, or a legal remedy to which one asserts a right"; further defining "claim" as, "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing"]; see also Fed. Rules Civ. Proc., rules 8 [describing what a plaintiff must plead as to individual claims for relief within a complaint], 12(b)(6) [procedure for a defendant to move to dismiss a claim upon which relief cannot be granted], 18 [permitting joinder of multiple claims against an opposing party].) If Congress had intended the result Miniso seeks, it would have used the term "claim" instead of "case" (saying something like no arbitration agreement "shall be valid or enforceable with respect to a ~~case~~ <u>claim</u> which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute"), or alternatively stated that the arbitration provision would be unenforceable "only to that portion of the case related to the sexual harassment dispute." Congress did not use such language, and we "lack the power to rewrite a statute to make it conform to a ' " ' "presumed

14

intention" ' " ' which is not expressed in the statute itself. [Citation.]" (*Chinese Theatres, LLC v. County of Los Angeles* (2020) 59 Cal.App.5th 484, 492.)

Thus, under the EFAA, Liu may not be compelled to arbitrate any of her claims because the "case" she filed under state law (her superior court lawsuit) "relates to . . . the sexual harassment dispute" in that her complaint contains claims premised on conduct that is alleged to constitute sexual harassment under state law.

Recognizing the difficulties posed by the statute's use of the word "case," Miniso instead points to the definition of " 'sexual harassment dispute' " set forth in section 401(4). Miniso contends that only sexual harassment claims fit within the definition of " 'sexual harassment dispute,' " and that the EFAA thus can only apply to sexual harassment claims. This approach ignores other operative provisions of the EFAA. Under the language of section 402(a), a plaintiff who "alleg[es] conduct constituting a sexual harassment dispute" can elect to render an arbitration agreement invalid or unenforceable "with respect to" the plaintiff's "case," and not just the "sexual harassment dispute."[5]

_____

[5] Miniso's interpretation is also flawed to the extent it equates a " 'sexual harassment dispute' " as defined in section 401(4) with a sexual harassment claim. Under section 401(4), " 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." This is broader than merely claims alleging sexual harassment. For example, cases have recognized that a claim alleging retaliation for complaining about

15

Miniso similarly argues that the EFAA applies only to "disputes" and "claims" because section 3 of the act provides the EFAA "shall apply with respect to any dispute or claim that arises or accrues on or after [March 3, 2022]." (Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (Mar. 3, 2022).)[6] Section 3 governs the EFAA's temporal effectiveness, and does not dictate what claims fall within the definition of " 'sexual harassment dispute' " (§ 401(4)), much less the effect under section 402(a) when a plaintiff's case relates to a "sexual harassment dispute."

Our interpretation of section 402(a)'s plain language does not yield an absurd result. (*Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, *supra*, 530 U.S. at p. 6; *Tuolumne Jobs & Small Business Alliance v. Superior Court*, *supra*, 59 Cal.4th at p. 1037.) Allowing a plaintiff "alleging conduct constituting a sexual harassment dispute" (§ 402(a)) to opt out of arbitration for their entire case avoids the potential for inefficiency in having separate proceedings in court and an arbitration forum, and the related additional burden placed on the parties of having to litigate claims in both a court proceeding and an arbitration. In addition, having a clear-cut rule that can be easily applied allows courts to avoid making the sometimes-difficult determination, particularly at the pleading stage, whether a given claim sufficiently overlaps with allegations of sexual harassment.

---

sexual harassment is a " 'sexual harassment dispute.' " (See, e.g., *Johnson v. Everyrealm, Inc.*, *supra*, 657 F.Supp.3d at p. 559.)

[6] Section 3 of the EFAA was not codified in the United States Code.

Our interpretation of the EFAA, and specifically section 402(a), accords with the only appellate decision published to date on this issue, *Doe v. Second Street Corp.*, where the court held, "By its plain language . . . the [EFAA] applies to the entire *case*, not merely to the sexual assault or sexual harassment claims alleged as a part of the case." (*Doe v. Second Street Corp.*, *supra*, ___ Cal.App.5th at p. ___ [2024 WL 4350420 at p. *13].) The *Doe* court adopted the "well-reasoned analysis" undertaken by the federal district court in *Johnson v. Everyrealm, Inc.*, *supra*, 657 F.Supp.3d 535. (*Doe v. Second Street Corp.*, at p. ___ [2024 WL 4350420 at p. *13].) In *Johnson*, the court concluded, based on common dictionary definitions, the word " '[c]ase' . . . captures the legal proceeding as an undivided whole," and held, "[w]ith th[is] ordinary meaning of 'case' in mind, the text of [section] 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute . . . ." (*Johnson v. Everyrealm, Inc.*, at p. 559.) The two other published federal district court decisions on this issue have followed *Johnson*. (See *Turner v. Tesla, Inc.*, *supra*, 686 F.Supp.3d at pp. 925, 927 [finding *Johnson v. Everyrealm* to be persuasive in holding the EFAA permitted the plaintiff to invalidate her arbitration agreement with her former employer as to all claims asserted in her lawsuit, including a claim under Lab. Code, § 6310 for retaliation for reporting a workplace injury]; *Delo v. Paul Taylor Dance Foundation, Inc.*

17

(S.D.N.Y. 2023) 685 F.Supp.3d 173, 180-181 [finding *Johnson v. Everyrealm* persuasive and following it].)[7]

One federal magistrate judge has published a contrary decision. In *Mera v. SA Hospitality Group, Inc.* (S.D.N.Y. 2023) 675 F.Supp.3d 442, the court ruled that under the EFAA the parties' arbitration agreement was unenforceable with respect to the plaintiff's hostile work environment claims, but not with respect to the plaintiff's wage and hour claims, which were "unrelated" to the hostile work environment claims and "[we]re pled as to a broad group of individuals in addition to [the p]laintiff." (*Id.* at p. 447.) The court held, "under the EFAA, an arbitration agreement executed by an individual alleging conduct constituting a sexual harassment dispute is unenforceable only to the extent that the case filed by such individual 'relates to' the sexual harassment dispute," and reasoned, "[t]o hold otherwise would permit a plaintiff to elude a binding arbitration agreement with respect to wholly unrelated claims affecting a broad group of individuals having nothing to do with the particular sexual harassment affecting the plaintiff alone." (*Ibid.*) The court also concluded that, under *KPMG LLP v. Cocchi* (2011) 565 U.S. 18, 22 [132 S.Ct. 23, 181 L.Ed.2d 323], the wage and hour claims had to be arbitrated because they "d[id] not relate in any way to the sexual harassment dispute." (*Mera v. SA Hospitality Group, Inc.*, at p. 448.)

---

[7] Aside from United States Supreme Court opinions, federal cases are not binding on us, although they can have persuasive value. (*Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1714-1715.)

To the extent *Mera* held that, under the EFAA, only those claims in a plaintiff's case that related to the plaintiff's "sexual harassment dispute" were exempt from arbitration, we find the decision unpersuasive based on the plain language of section 402(a). In interpreting section 402(a) to invalidate an arbitration agreement "only to the extent that the case . . . 'relates to' the sexual harassment dispute" (*Mera v. SA Hospitality Group,* LLC, *supra,* 675 F.Supp.3d at p. 447), the *Mera* court in effect added "to the extent" to the statutory language, which contravenes the rules of statutory construction. (See *Chinese Theatres, LLC v. County of Los Angeles*, *supra,* 59 Cal.App.5th at p. 492.) Furthermore, as is discussed below, we conclude that the rule announced in *KPMG LLP v. Cocchi* does not alter or override the plain language of the EFAA.[8]

Given our resolution of this appeal based on the plain language of the EFAA, we have no grounds to consider the legislative history of the act. (*N.L.R.B. v. SW General, Inc.* (2017) 580 U.S. 288, 305 [137 S.Ct. 929, 197 L.Ed.263] [there is no need to consider legislative history where a statute's "text is clear"]; *Tuolumne Jobs & Small Business Alliance v. Superior Court*, *supra,* 59 Cal.4th at p. 1040 [courts will consider legislative

---

[8] The *Mera* case is also factually distinguishable to the extent the plaintiff there sought to assert claims on behalf of a class or otherwise sought relief on behalf of others. In this case Liu asserts only claims on her own behalf. As we are not presented with the question what impact the EFAA has on claims asserted on behalf of a class or other representative claims, we express no opinion on that issue.

19

history "[t]o the extent statutory language is ambiguous or open to more than one reasonable interpretation"].)[9]

## D. The United States Supreme Court Opinions in *Dean Witter Reynolds Inc. v. Byrd* and *KPMG LLP v. Cocchi* Do Not Compel a Different Result

In arguing the claims in Liu's complaint should be split between arbitration and court, Miniso relies on two United States Supreme Court cases, *Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213 [109 S.Ct. 1238, 84 L.Ed.2d 158) and *KPMG LLP v. Cocchi, supra*, 565 U.S. 18. Those cases stand for the proposition that under the FAA "if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." (*KPMG LLP v. Cocchi*, at p. 19, citing *Dean Witter Reynolds Inc. v. Byrd*, at p. 217.) However, this proposition is inapplicable here because, under the plain language of section 402(a), when a plaintiff "alleg[es] conduct constituting a sexual harassment dispute" then the plaintiff can opt their entire "case" out of arbitration. In

---

[9] Miniso points out that Liu's brief erroneously cited legislative history for the federal Speak Out Act (see 168 Cong. Rec. H8518 (Nov. 16, 2022)), legislation which is separate from the EFAA and governs the enforceability of certain nondisclosure and non-disparagement agreements. Liu later filed a notice of errata acknowledging her brief quoted and relied upon statements by legislators from the debate on the Speak Out Act, and indicating the mistake was unintentional. We nevertheless find it troubling that Liu's brief not only attributed legislators' comments on the Speak Out Act to the EFAA, but on one occasion used brackets to replace what would have been a clear reference to the Speak Out Act so that it read as an express reference to "[t]he EFAA."

other words, when the EFAA applies there are no arbitrable claims left.

Notably, both *Dean Witter* and *KPMG* relied upon the FAA's purpose to enforce the contractual rights and expectations of parties to an arbitration agreement, as expressed in section 2, which at the time provided that such an agreement " ' "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." ' " (*KPMG LLP v. Cocchi*, *supra*, 565 U.S. at pp. 21-22; *Dean Witter Reynolds Inc. v. Byrd*, *supra*, 470 U.S. at p. 218.)  However, the EFAA amended this section to state expressly that the EFAA, i.e., chapter 4 of the FAA, provides its own rule; thus, section 2 now states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract *or as otherwise provided in chapter 4*."  (Italics added.)

Lastly, we note that Miniso mischaracterizes the trial court's ruling as based on the so-called " 'doctrine of intertwining,' " which the Supreme Court rejected in *Dean Witter*. (*Dean Witter Reynolds Inc. v. Byrd*, *supra*, 470 U.S. at pp. 216-217, 218, fn. omitted [rejecting rule that, "When arbitrable and nonarbitrable claims arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court . . . may in its discretion deny arbitration as to the arbitrable claims and try all the claims together in federal court"].)  The trial court did not employ any type of "intertwining" analysis in refusing to compel arbitration of any of Liu's claims, and instead based its ruling on its interpretation of the EFAA, an interpretation we also adopt.

## DISPOSITION

We affirm the trial court's order denying Miniso's motion to compel arbitration. Liu is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION


                                        WEINGART, J.


We concur:



ROTHSCHILD, P. J.



KLINE, J.*

---

\* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.