Rel: March 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

———————————————

### SC-2024-0494

———————————————

### Trista Carter

### v.

### Johnny Mack Morrow and Martha Morrow

### Appeal from Franklin Circuit Court
### (CV-23-900162)

WISE, Justice.

Trista Carter appeals from the Franklin Circuit Court's judgment denying her motion to compel arbitration.

Facts and Procedural History

In July 2023, Carter and Johnny Mack Morrow entered into a cash sales contract ("the contract") whereby Carter agreed to purchase a house

and 245 acres from Morrow and his wife, Martha Morrow, for $1,600,000.[1] The contract provided for Carter to pay earnest money in the amount of $25,000, and included the following provisions:

"11. DEFAULT: Should either the Seller or Purchaser fail to carry out the terms of this contract in accordance with all its provisions, an aggrieved party shall have the option to do one of the following:

"(a)  File a proceeding in a Court of competent jurisdiction provided (a) the proceedings are non-jury and THE RIGHT TO TRIAL BY JURY IS WAIVED, (b) the amount in controversy (excluding funds held as earnest money) does not exceed $3,000.00 and (c) no licensed real estate professional is a party, except as a stake holder of earnest money; OR,

"(b)  Reaffirm the contract and proceed through binding arbitration under paragraph 13 for the recovery of damages and/or for specific performance.

"The damages in either instance may include any cost(s) incurred by the non-breaching party including reasonable attorney's fees.

"12. TRUST ACCOUNT: Seller and Purchaser hereby direct the Selling Company (working with Purchaser and herein referred to as Holder) to deposit the earnest money in Holder's escrow account pending fulfillment of this contract. Earnest money shall be deposited within two banking days after the Binding Agreement date. Proof of earnest money will be furnished to the Listing Company upon receipt. It is understood that the Holder is, (a) not a party to this contract

---

[1]The contract designated Johnny as the seller. However, Morrow and his wife both initialed and signed the contract as sellers.

and does not assume any liability for performance or non-performance of any signatory, (b) must require from all signatories a written release of liability of the Holder which authorizes the release of the earnest money. <u>In the event a dispute arises between the parties to this contract as to which shall be entitled to said earnest money, the Holder may interplead said earnest money into the proper court, and in so doing shall be entitled to deduct from the earnest money for court costs, attorney's fee, and other expenses relating to the interpleader. Alternatively, any party may proceed in a court of competent jurisdiction for interpleading of said earnest money.</u> The prevailing party in any interpleader action shall be entitled to collect from the other party the court costs, attorney's fees and other expenses of the interpleader which shall be paid to the prevailing party. In the event any Earnest Money check is not honored, for any reason, by the bank upon which it is drawn, Holder shall promptly notify Purchaser and Seller. Purchaser shall have two (2) working days after notice to deliver good funds to Holder. In the event Purchaser does not timely deliver good funds within two (2) working days, Purchaser is in default and the Seller may cancel the contract by notice to the Purchaser. In any proceedings under this paragraph, the right to trial by jury is waived.

"13. ALTERNATIVE DISPUTE RESOLUTION AGREEMENT BY BINDING ARBITRATION: In connection with the purchase and sale of the above described property, except for those disputes described in Paragraph 12 Purchaser and Seller mutually covenant, stipulate and agree in connection with the resolution of any dispute or controversy arising out of or relating to this agreement or concerning the within described property, or the breach, termination, or validity thereof, as follows: That the transaction contemplated in this agreement directly involves interstate commerce, and said transaction has been and will continue to be regulated by the laws of the United States of America; and, that the contract(s) entered into by the parties concerning this property evidence transactions involving and affecting

3

commerce. <u>The undersigned agrees that all disputes not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of this agreement; that included herein in matters to be arbitrated are equitable claims and remedies, including specific performance and rescission; that Purchaser and Seller agree to submit such dispute(s) to BINDING ARBITRATION,</u> pursuant to the provisions of 9 U.S.C. Section 1, et seq. and according to the Commercial Rules of the American Arbitration Association then existing in the County where the property being sold is located, and shall be decided by an arbitrator recognized by the Alabama Center for Dispute Resolution and pursuant to the rules of American Arbitration Association or, if agreed by both parties, some other recognized body and pursuant to the rules of American Arbitration Association. The prepaid arbitration filing fees and all other prepaid costs of the arbitration proceeding shall be paid by the party seeking to invoke arbitration, with the assignment of those costs to be divided between the parties as the arbitrator sees fit in setting the Arbitration Award. Damages may include reasonable attorney's fees. It is hereby agreed that it is the intent of the parties that the Arbitrator's Award is to be final and binding and judgment upon the award rendered by the arbitration may be entered in any court having jurisdiction thereof. <u>This alternative dispute resolution agreement shall specifically exclude those disputes provided for in paragraph 12 and shall further specifically exclude those disputes as defined in paragraph 11(a)</u>; however, it is mutually agreed, covenanted, and stipulated that the right to a trial by jury is hereby waived. EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY."

(Capitalization in original; emphasis added.) The closing of the sale did

not take place.

4

On December 7, 2023, the Morrows sued Carter in the Franklin Circuit Court. The Morrows also named Crye-Leike, Inc., which was the company holding the earnest money, as a defendant. In count one of the complaint, the Morrows asserted a breach-of-contract claim against Carter, alleging:

> "6.    That pursuant to the terms of the contract, entered into between the Plaintiffs and Defendant, Trista M. Carter, earnest money, in the amount of $25,000.00, was nonrefundable should buyer not be able to close on or before 10/13/23.
>
> "7.    Plaintiffs aver that Defendant, Trista M. Carter has breached said contract by failing to complete the purchase of the home by the closing date and as such should be liable to pay to the Plaintiffs any and all earnest money plus damages incurred by the Plaintiffs as a result of the Defendant failing to complete the purchase of the subject home."

The Morrows sought "compensatory damages in an[] amount not to exceed the sum of $75,000.00 inclusive of interest and costs." Count two was a "Complaint for Payment of Monies Due and Payable." In that count, the Morrows alleged:

> "9.    Defendant, Crye-Leike, Inc., is a necessary and indispensable party, under Ala. R. Civ. P. Rule 19, in that complete relief cannot be accorded among those already parties without the joinder of said defendant and for the purpose of remitting the earnest money currently held by said Defendant, as a result of the

5

contract referred to in paragraphs 1 through 7, to the Franklin County Circuit Court. Upon remittance of the earnest money held [by] Defendant, Crye-Leike, Inc., Plaintiffs would show unto the Court that said Defendant should be dismissed from this action.

"WHEREFORE, the Plaintiffs request[] that Defendant, Crye-Leike, Inc., remit any earnest money held by [it] as a result of the Contract entered into between Plaintiffs, Martha Morrow and Johnny Mack Morrow and Defendant, Trista M. Carter, to the Franklin County Circuit Court. Further, Plaintiffs respectfully request[] the Court to dismiss the Defendant, Crye-Leike, Inc., from this action upon remittance of the referenced earnest money to the Franklin County Alabama Circuit Clerk."

Carter filed a motion to compel arbitration and a brief in support thereof. In support of her motion, Carter attached her affidavit and a copy of the contract. Carter asserted that the contract included an arbitration agreement "that mandates the parties to submit any and all claims arising from the Contract to arbitration" and that the contract involved interstate commerce. The Morrows filed a response to the motion to compel. The Morrows quoted the arbitration agreement in paragraph 13 of the contract and emphasized the language excluding "disputes described in Paragraph 12." They also quoted paragraph 12 of the contract, which provided that the earnest money was to be deposited into an escrow account and that an interpleader action could be brought

6

in an appropriate court in the event that there was a dispute between the parties regarding the earnest money.

The trial court conducted a hearing on Carter's motion to compel. The record on appeal does not include a transcript of that hearing. The trial court entered a judgment denying the motion to compel in which it stated, in pertinent part:

> "1. The cash sales contract between the parties contained an arbitration clause.
>
> "2. The arbitration clause does not apply to disputes arising under paragraphs 11 and 12 of the contract.
>
> "3. The dispute made the basis of the complaint appears to fall within the exceptions to the arbitration clause."

Carter filed a motion to alter, amend, or vacate the trial court's judgment denying her motion to compel. In her postjudgment motion, Carter asserted:

> "1.  This Court entered an order denying Carter's motion to compel arbitration based on paragraph 12 of the cash sales contract. The language of paragraph 12 of the cash sales contract <u>only applies to an interpleader action</u>. The plain terms of the contract specify that the interpleader action is only as to the dispute regarding the earnest money. Indeed,
>
> > "'Interpleader is a means by which a party may prevent being subjected to double or multiple liability. See Rule 22, Ala. R. Civ.

7

P. The purpose of interpleader is "to bring all claimants to a fund into court in one action and determine who is entitled to the fund or to a portion of it."'

"Ex parte Scoggins, 354 So. 3d 429, 461 (Ala. 2021) (citations omitted).

"2. However, the Plaintiffs in this cause filed a claim for 'breach of contract' which is not solely an interpleader action regarding the earnest money. Instead, the Plaintiffs request 'damages incurred by the Plaintiffs as a result of the Defendant failing to complete the purchase of the subject home.' Clearly, said claim is not merely an interpleader claim, but a claim involving a 'dispute or controversy arising out of or relating to this agreement or concerning the within described property, or the breach, termination, or validity thereof …' (Cash Sales Contract, ¶ 13).

"3. Plaintiffs admitted that the arbitration clause exists and that it involves interstate commerce. As Plaintiffs' claims do not fall solely within paragraph 12 of the cash sales contract, Carter's motion to compel arbitration is due to be granted."

On April 16, 2024, Carter filed an amended motion to alter, amend, or vacate. She reasserted her previous arguments and also argued:

"4. Lastly, Plaintiffs do not face potential double or multiple liability with respect to the earnest money and therefore cannot institute an interpleader action to fall within the exception of paragraph 12 of the cash sales contract. In order to interplead one must likely or potentially 'be exposed to double or multiple liability.' Ala. R. Civ. P. 22. When the party seeking to interplead does not potentially face multiple or double liability, that party's

8

interpleader cannot stand. See Ex parte Chatham, 109 So. 3d 662, 664 (Ala. Civ. App. 2012) (appellate court granting mandamus relief when trial court erroneously granted a motion to interplead funds when the party bringing the motion did not face multiple or double liability).

"Here, the Plaintiffs do not face multiple or double liability. Indeed, the only party who would potentially face such liability is the holder of the earnest money, which is not the Plaintiffs. Furthermore, the only liability Plaintiffs face regarding the earnest money is to Carter. Accordingly, Plaintiffs cannot institute interpleader under the Alabama Rules of Civil Procedure. Therefore, Carter's motion to compel is due to be granted as a matter of law."

Carter's postjudgment motions were denied by operation of law. This appeal followed. See Rule 4(d), Ala. R. App. P.

Discussion

Carter argues that the trial court erroneously denied her motion to compel.

"'"This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So. 2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. '[A]fter a motion to

9

> compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So. 2d 1260, 1265 n.1 (Ala. 1995)(opinion on application for rehearing)."'
>
> "Elizabeth Homes, L.L.C. v. Gantt, 882 So 2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000))."

Hoover Gen. Contractors-Homewood, Inc. v. Key, 201 So. 3d 550, 552 (Ala. 2016).

In this case, Carter presented evidence demonstrating that the contract calls for arbitration. In her brief in support of her motion to compel, Carter further argued that the Morrows' "allegations of an unconsummated real estate transaction and consequential request for damages indubitably arise solely from" the contract. Additionally, in her affidavit in support of her motion to compel, Carter stated, in pertinent part:

> "As mentioned, I am a resident of Florida. The Property is located in Alabama. The real property agency representing me in the purchase was 'Property Pros' who has been my real estate agent in the state of Mississippi. To my knowledge, my real estate agent's office is located in Mississippi. Further, according to the Plaintiffs, Crye-Leike, Inc., who holds the earnest money I paid pursuant to the Contract, has a principal place of business in Tennessee."

10

Thus, Carter presented evidence indicating that the contract evidenced a transaction affecting interstate commerce. See Thompson v. Skipper Real Estate Co., 729 So. 2d 287, 290 (Ala. 1999) (plurality opinion) (holding that an intrastate real-estate contract had an effect on the provision of services in interstate commerce when the purchasers "obtained their financing from a corporation operating out of Arizona (which later assigned the note and mortgage to a corporation operating out of Florida); … obtained their title insurance from a California corporation; and … obtained their homeowner's insurance from a corporation operating out of Ohio"). Accordingly, the burden shifted to the Morrows to present evidence indicating that the arbitration agreement is not valid or does not apply to the dispute in question.

The Morrows argue that the arbitration agreement does not apply to the dispute in this case. The arbitration agreement in paragraph 13 of the contract specifically provides, in pertinent part: "This alternative dispute resolution agreement shall specifically exclude those disputes

11

provided for in paragraph 12 …."[2]  Paragraph 12 of the contract provides,

in pertinent part:

> "In the event a dispute arises between the parties to this contract as to which shall be entitled to said earnest money, the Holder may interplead said earnest money into the proper court, and in so doing shall be entitled to deduct from the earnest money for court costs, attorney's fee, and other expenses relating to the interpleader.  Alternatively, any party may proceed in a court of competent jurisdiction for interpleading of said earnest money."

(Emphasis added.)  Count two of the complaint arose from a dispute over

the earnest money, and the Morrows sought to interplead the earnest

money held by Crye-Leike.  Thus, the interpleader count set forth in

count two of the complaint was specifically excluded by the arbitration

---

[2]The arbitration agreement also provides that it "specifically exclude[s] those disputes as defined in paragraph 11(a)."  The Morrows do not argue that the exception set forth in paragraph 11(a) is applicable to this case.  In fact, that paragraph provides that it is applicable only when "the amount in controversy (excluding funds held as earnest money) does not exceed $3,000.00."  In this case, the Morrows asserted that Carter should be liable to pay them "all earnest money plus damages incurred" and sought a judgment against Carter "for compensatory damages in an[] amount not to exceed the sum of $75,000.00 inclusive of interest and costs."

agreement. Accordingly, the trial court properly denied Carter's motion to compel as to that claim.[3]

---

[3]Carter argues that the Morrows could not properly bring an interpleader action pursuant to Rule 22, Ala. R. Civ. P., because, she says, they do not face multiple or double liability. Although the trial court conducted a hearing on the motion to compel, Carter has not provided a transcript of that hearing or a statement of the evidence or proceedings pursuant to Rule 10(d), Ala. R. App. P.

> "'The law is settled that it is the appellant's duty to ensure that the appellate court has a record from which it can conduct a review. Cooper & Co. [v. Lester, 832 So. 2d 628 (Ala. 2000)]; [Alfa Mut. Gen. Ins. Co. v.] Oglesby, [711 So. 2d 938 (Ala. 1997)]; and Gotlieb v. Collat, 567 So. 2d 1302 (Ala. 1990). Further, in the absence of evidence in the record, this Court will not assume error on the part of the trial court. Browning v. Carpenter, 596 So. 2d 906 (Ala. 1992); Smith v. Smith, 596 So. 2d 1 (Ala. 1992); Totten v. Lighting & Supply, Inc., 507 So. 2d 502 (Ala. 1987).'

"Zaden v. Elkus, 881 So. 2d 993, 1009 (Ala. 2003)."

Parker v. Williams, 977 So. 2d 476, 481 (Ala. 2007). Based on the record before this Court, we will not assume that Carter presented this specific argument during the hearing on her motion to compel. Accordingly, based on the record before us, it appears that Carter raised this argument for the first time in her amended motion to alter, vacate, or amend.

> "This Court has held that the trial court has discretion whether to consider arguments raised for the first time in a postjudgment motion. See, e.g., Special Assets, LLC v. Chase Home Fin., LLC, 991 So. 2d 668, 676-77 (Ala. 2007); Green Tree Acceptance, Inc. v. Blalock, 525 So. 2d 1366, 1369

However, in count one of the complaint, the Morrows asserted a breach-of-contract claim against Carter. In that count, the Morrows did not argue solely that they were entitled to the earnest money paid by Carter. They also argued that they were entitled to "damages incurred by the [Morrows] as a result of [Carter's] failing to complete the purchase of the subject home" and requested a judgment "for compensatory damages in an[] amount not to exceed the sum of $75,000.00 inclusive of interest and costs." With the exception of disputes provided for in

---

(Ala.1988) ('[A] trial court has the discretion to consider a new legal argument in a post-judgment motion, but is not required to do so.'). Melton has not identified any justification for her delay in raising this argument. Her postjudgment motion was denied by operation of law when the trial court failed to rule on it within 90 days. See Rule 59.1, Ala. R. Civ. P. Therefore, there is no indication in the record that the trial court considered Melton's argument regarding reformation, and we are not required to presume that it did. See Special Assets, supra. Melton has not shown any basis upon which we can conclude that the trial court exceeded its discretion in failing to consider her argument regarding reformation."

Melton v. Harbor Pointe, LLC, 57 So. 3d 695, 700-01 (Ala. 2010). Similarly, in this case, Carter's postjudgment motions were denied by operation of law. Therefore, there is no indication in the record that the trial court actually considered the merits of this argument, and Carter is not entitled to relief as to this claim.

14

paragraph 11(a) and paragraph 12 of the contract, the arbitration agreement specifically provides, in pertinent part:

> "The undersigned agrees that <u>all disputes</u> not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of this agreement; that included herein in matters to be arbitrated are equitable claims and remedies, including specific performance and rescission; that Purchaser and Seller agree to submit such dispute(s) to BINDING ARBITRATION."

(Capitalization in original; emphasis added.) Thus, the Morrows' breach-of-contract claim is clearly arbitrable pursuant to the terms of the arbitration agreement.

> "The United States Supreme Court has instructed that the Federal Arbitration Act requires that 'if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.' <u>KPMG LLP v. Cocchi</u>, 565 U.S. 18, 19, 132 S. Ct. 23, 24, 181 L. Ed. 2d 323 (2011); see also <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)."

<u>Porter v. Williamson</u>, 168 So. 3d 1215, 1220 (Ala. 2015). Accordingly, the trial court erroneously denied Carter's motion to compel as to the Morrows' breach-of-contract claim.[4]

_____

[4]As this Court noted in <u>Porter</u>:

> "Although not raised on appeal, we recognize the very real potential for inconsistent results should Williamson's

15

Conclusion

For the above-stated reasons, we affirm the trial court's judgment denying Carter's motion to compel as to the Morrows' interpleader claim, but we reverse the trial court's judgment denying Carter's motion to compel as to the Morrows' breach-of-contract claim. Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Stewart, C.J., and Mitchell and McCool, JJ., concur.

Sellers, J., concurs in the result.

---

alternative claim for recission of the agreement be sent to arbitration while his claim for specific performance of the contract remain pending in the trial court. We note that, in such cases, the trial court has the discretion to order a stay of the nonarbitrable claims. See Terminix Int'l Co. v. Jackson, 669 So. 2d 893, 899 (Ala. 1995)."

168 So. 3d at 1220 n.6.